**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| ADELINE CLARK, et al. | Case No. 4:19-cv-00012-JEG-RAW |
| Plaintiffs, | |
| vs. | |
| FRONTIER AIRLINES, INC. | **PLAINTIFFS' BRIEF IN RESISTANCE TO DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………… 2

STATEMENT OF FACTS ……………………………………………………………...…. 3

ARGUMENT ……………………………………………………………………….... 5

I.   THE MOTION TO DISMISS UNDER RULE 12(B)(6) SHOULD BE
      DENIED BECAUSE THE PLAINTIFFS HAVE STATED A
      LEGALLY SUFFICIENT CLAIM   …………………………………………… 6

      a.  The Complaint meets the minimum requirements of the Rule   ……….…. 6
      b.  The Complaint asserts sufficient facts to support the Court's jurisdiction   ……. 7

II.  DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMMON-LAW
      CLAIMS SHOULD BE DENIED BECAUSE INTERPRETATION OF THE
      COLLECTIVE BARGAINING AGREEMENT IS UNNECESSARY   ……..…….. 9

      a.   Promissory Estoppel   …………………………………………...………… 10

      b.   Unjust Enrichment   …………………………………………….…..……. 11

CONCLUSION   …………………………………………………………..…. 12

## INTRODUCTION

Plaintiffs are a group of approximately 100 former flight attendants who were employed by the Defendant, Frontier Airlines, Inc. ("Frontier") for varying lengths of time.  For many years, Frontier experienced significant financial difficulties.  In 2008 the Company filed for bankruptcy.  As it struggled to remain afloat, Frontier began a series of aggressive cost-cutting measures to downsize the company.

While Frontier was attempting to quickly reduce its operating costs, Plaintiffs and other employees experienced wage and benefits reductions, as well as reductions in force.  Soon after, the Frontier flights attendants voted to unionize.  Plaintiffs were represented by the Association of Flight Attendants – CWA ("AFA").  In 2011, the AFA negotiated, and the members ratified, a collective bargaining agreement ("CBA") outlining various terms and conditions of employment.  Among them was Article 24, a provision allowing for "Equity, Profit-Sharing, and Wage & Benefit Snapbacks".

Between January 1, 2012 and March 15, 2017, Plaintiffs separated their employment with Frontier for various reasons and at various times.  Only after leaving employment, did the Plaintiffs learn that, according to Frontier and AFA, they would no longer be eligible for Article 24 benefits even though they had endured the wage and benefit reductions which those benefits were specifically designed to offset.  Thereafter, Plaintiffs brought claims for (1) Breach of Contract, (2) Promissory Estoppel, and (3) Unjust Enrichment against Frontier.

Labor-management relations in the airline industry are governed by the Railway Labor Act. 45 U.S.C. §151 *et seq.* ("RLA").  The RLA covers every common carrier by air that is engaged in interstate commerce.

## STATEMENT OF FACTS

The Plaintiffs are approximately 100 former Frontier flight attendants located throughout the United States.  *See* Compl. (ECF No. 1) ¶ 1.  The Defendant, Frontier Airlines, Inc. is a Delaware corporation with its principal place of business located in Denver, Colorado.  *Id.*  ¶ 2.  Frontier is authorized to transact business in the State of Iowa, pursuant to a Certificate of Authority (#351804) filed with the Iowa Secretary of State.  *Id.*  Frontier was and is a "carrier" within the meaning of the RLA.  *Id.*  ¶ 5.

Frontier and the Union negotiated to form a collective bargaining agreement (CBA) in 2011.  *Id.* ¶ 6.  On October 11, 2011, Frontier and the Union agreed to Flight Attendant Restructuring Investments (commonly known as "concessions") which were memorialized in a letter signed by the parties.  *Id.* at 13-14.  Three days later, on October 14, 2011, Frontier and the Union executed the CBA.  *Id.* ¶ 6.

The CBA included, in relevant part, Articles 24A and 24D, which provide as follows:

### ARTICLE 24 EQUITY, PROFIT-SHARING, AND WAGE & BENEFIT SNAPBACKS

**A.  EQUITY PARTICIPATION** Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

1.  The value of the Equity Participation is $16.0 million.

2.  The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any higher rate offered to any other key stakeholder in the restructuring process.

3.  The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the

> Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.
>
> 4. Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary drag along rights.
>
> 5. Vesting: The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments". To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%.
>
> **D.  ADDITIONAL PROVISIONS**  Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement. *See* Compl. (ECF No. 1) at 11-12.

The purpose of Article 24 was to provide incentives to flight attendants for the restructuring investments identified in the October 11, 2011 letter. *Id.* ¶ 9. Each of the Plaintiffs were on the Frontier Flight Attendant Seniority List on January 1, 2012. *Id.* ¶ 10.

On March 15, 2017, Frontier and the Union signed a Letter of Agreement ("LOA") to modify/amend the CBA. *Id.* ¶ 12. The terms of the Agreement required Frontier to pay $40 million dollars to satisfy the Equity Participation provision of Article 24A ("Equity Payment"). *Id*. The Agreement further specified that the Union would have sole authority to determine which flight attendants on the seniority list would be eligible for a share of the Equity Payment. *Id.* ¶ 13. Significantly, employees of both the Union and Frontier have testified under oath (in the grievance process) that the Equity Payment was an "equity event" which triggered the equity participation provisions of Article 24.

Despite the clear and obvious meaning of Article 24D, which required only that a flight attendant be "on the seniority list as of January 1, 2012", the Union determined (in 2017) that a flight attendant must also be "continuously employed" with Frontier through March 15, 2017 in order to be eligible for an Equity Payment. *Id.* ¶ 14. As a result, Plaintiffs were denied an Equity Payment because they left employment with Frontier prior to March 15, 2017. *Id.* ¶15.

On May 25, 2017 and June 13, 2017, the Plaintiffs filed a Grievance with Frontier, through their undersigned counsel, alleging they were entitled to a share of the Equity Payment due to their placement on the flight attendant seniority list as of January 1, 2012. *Id.* ¶ 16. Frontier held a telephonic hearing on June 20, 2017 and issued a denial of the consolidated grievances on June 30, 2017. *Id.* ¶ 17. Thereafter, the Plaintiffs timely appealed their denial to the System Board of Adjustment, which conducted a hearing on March 20, 2018. *Id.* The Board issued an Opinion and Award on October 23, 2018, denying Plaintiffs' collective grievance. *Id.* ¶*19.*

## ARGUMENT

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiffs' factual allegations as true and view them in the light most favorable to the nonmoving party. *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010); *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768–69 (8th Cir. 2012). "The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint." *Doyel v. McDonald's Corp*., 2009 U.S. Dist. LEXIS 9622 at 3 (E.D. Mo. 2009). The Petition must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When reviewing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 857 (8th Cir. 2013). The court may "dismiss the case only when it appears beyond [a] doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [the plaintiffs] to relief." *Mo. River Sys. Litig.,* 418 F.3d at 917 (internal quotations omitted). "The issue is not whether the plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## I.     THE MOTION TO DISMISS UNDER RULE 12(B)(6) SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE STATED A LEGALLY SUFFICIENT CLAIM

The Defendant's motion seeks to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) due to a purported failure to state a claim for which relief can be granted. In making its argument, the Defendant fails to identify any deficiencies in the facts related to the substance of Plaintiffs' claims (Breach of Contract, Promissory Estoppel, and Unjust Enrichment). Instead, Defendant relies almost exclusively on its belief that Plaintiffs failed to allege the facts necessary for the Court to exercise jurisdiction.

### a. The Complaint meets the minimum requirements of the Rule.

As set forth in Fed. R. Civ. P. 8(a), a complaint must meet certain minimum requirements, including "a short and plain statement of the grounds for the court's jurisdiction". Fed. R. Civ. P. 8(a)(1).  Plaintiffs' complaint meets the legal standard set forth in this rule. Paragraphs three and four clearly outline the basis for this Court's jurisdiction and venue.  Yet, somehow, the Defendant asserts Plaintiffs' Complaint is factually insufficient to determine the Court's ability to review such matters.

### b.  The Complaint asserts sufficient facts to support the Court's jurisdiction.

Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U. S. C. § 153 First (q). Only upon one or more of these bases may a court set aside an order of the Adjustment Board. See *Andrews* v. *Louisville & Nashville R. Co.,* 406 U. S., at 325; *Locomotive Engineers* v. *Louisville & Nashville R. Co.,* 373 U. S. 33, 38 (1963).

In addition to the statutorily created parameters of review, federal courts have recognized that Board arbitration decisions are reviewable for possible due process violations. *Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 997 (8th Cir. 2002); *See also Union Pac. R.R. v. Price,* 360 U.S. 601, 616, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959) (finding awards of the National Railway Adjustment Board reviewable for a violation of due process); *Shafii v. PLC British Airways,* 22 F.3d 59, 64 (2d Cir. 1994) ("Relinquishing courts' ability to review the NRAB's procedures for due process violations would leave unprotected a plaintiff's legitimate constitutional right to be treated in accord with due process before the Board."); *Armstrong*

*Lodge No. 762 v. Union Pac. R.R.,* 783 F.2d 131, 135 (8th Cir.1986) (reviewing an arbitration award where party argued the arbitration hearing failed to meet the requirements of due process).

Plaintiffs' Complaint asserts sufficient facts to support jurisdiction of this Court based on due process violations.  For example, paragraph 14 identifies the Union's efforts to change the eligibility requirements for an equity payment (thereby revealing their opposition to Plaintiffs' participation in the payments), and paragraph 17 reflects the Defendant's denial of Plaintiffs' collective grievance. Similarly, paragraph 18 makes clear that the three-person System Board of Adjustment was entirely composed of members chosen by the Defendant and Union, both which had already stated opposition to Plaintiffs' claim.  These facts, taken together, support Plaintiffs' assertion that the Board was impermissibly stacked against them. Any effort of a fair hearing before the Board was futile.

This case is analogous to *Edwards v. Capital Airlines*, 176 F.2d 755 (D.C. Cir. 1949).  In *Edwards*, two pilots sought judicial review of an unfavorable Board decision.  In permitting judicial review, the court stated:

> Persons in their situation must have available to them, at some point, an impartial look at a decision, thus made, denying their claims to substantial rights. This is the time-honored function of an equity court. The general principle, applicable alike to judicial and to administrative determinations, is too well settled to require citation of authority. We think that the danger to the rights of the non-member few, clearly inherent in the combination of circumstances here present, calls for the application of that doctrine. *Edwards* at 761.

Notably, the Board was composed of an equal number of union and company representatives. The pilots' claims were adverse to the union.  And, like the Plaintiffs in the case at hand, the grievant pilots were unrepresented on the Board.

Courts have also been sensitive to the potential inequity of requiring employees to "submit their controversy to a group which is in large part chosen by the [defendants] against whom their real complaint is made,'" *Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324,

330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969), *quoting Steele,* 323 U.S. at 206, 65 S.Ct. at 233, and they realize that such collusion between employer and union is a real possibility. *See Graf, 697 F.2d at 781* (collusion between union and employer would render remedies under arbitration provisions of RLA futile).

The Frontier System Board is a three-member panel consisting of a representative chosen by Frontier and another chosen by the Union, each of whom are unquestionably and unapologetically "adverse" to the claims being submitted by the Plaintiffs.[1]  The third member does not work for the Union or Frontier, but was specifically chosen by them.  Both Frontier and the Union representatives had a well-vested interest in the outcome – to protect their financial resources and those of their membership.  Furthermore, these representatives had *personally participated* in negotiating the underlying CBA and/or denying the initial grievance by Plaintiffs.[2]  A fundamental precept of due process has been that an interested party in a dispute cannot also sit as a decision-maker. *Internation Ass'n of Machinists and Aerospace Workers v. Metro-North Commuter Railroad*, 24 F.3d 369 (2nd Cir. 1984); See, e.g., *Withrow v. Larkin*, <u>421 U.S. 35</u>, 46-47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 578-79, 93 S. Ct. 1689, 1697-98, 36 L. Ed. 2d 488 (1973).  Under these circumstances, the likelihood of receiving a fair hearing was impossible.

## II.     DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMMON-LAW CLAIMS SHOULD BE DENIED BECAUSE INTERPRETATION OF THE COLLECTIVE BARGAINNG AGREEMENT IS UNNECESSARY

In addition to their claim for breach of the CBA, Plaintiffs' also assert the common-law claims of promissory estoppel (Count II) and unjust enrichment (Count III).

---

[1] Although the Plaintiffs submitted their initial grievance against Frontier, the union was permitted to participate.
[2] At the outset of the System Board of Adjustment hearing, Plaintiffs objected to the participation of two Board members, Edward Gilmartin and Howard Diamond, due to their previous involvement in this matter.

*a.  Promissory Estoppel*

The theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract.  4 Samuel Williston, Williston on Contracts § 8.4, at 41 (1992).  "[C]ourts have applied the principle of estoppel in effect to form a contract, when the promisee suffered detriment in reliance on a ... promise."  Id.; see also *Friedman v. BRW, Inc.*, 40 F.3d 293, 296 (8th Cir. 1994) (stating that the effect of the doctrine of promissory estoppel "is to imply a contract in law where none exists in fact"); *Miller v. Lawlor*, 245 Iowa 1144, 1152, 66 N.W.2d 267, 272 (1954) ("'Promissory estoppel' is now a recognized species of consideration."); *Huhtala v. Travelers Ins. Co.,* 401 Mich. 118, 257 N.W.2d 640, 647 n.16 (1977) (stating that in promissory estoppel claims, detrimental reliance on one side will suffice as "consideration").  When this court adopted the doctrine of promissory estoppel, we relied on the principles of law found in the Restatement of Contracts section 90 (1932). . .  Because the Restatement (Second) of Contracts contains a nearly identical statement of these principles, we quote from the latter Restatement:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.    Restatement (Second) of Contracts § 90, at 242 (1981).

The court has established the following elements as essential for recovery under a theory of promissory estoppel: "(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to this relief." Johnson v. Pattison, 185 N.W.2d 790, 795 (Iowa 1971); accord *National Bank v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989); *In re Estate of Graham,* 295 N.W.2d 414, 418 (Iowa 1980); *Schoff v Combined Ins. Co. of Am.*., 604 N.W.2d 43, 48 (Iowa 1999).

10

In the present case, the Plaintiffs have met this burden.  Separate from the contents of the CBA, Frontier made definite promises, through company communications and public comments, to allow Equity Participation for flight attendants.  These communications and public comments made no mention of continuous employment.  Plaintiffs relied on Frontier's clear promises that they were "entitled" to equity when ratifying the agreement.  Only after the CBA was ratified did Frontier seek to change the terms by requiring continuous employment.  Such action denies Plaintiffs of their equity, which can only be remedied through enforcement of the promise.

### b.  *Unjust Enrichment*

A party asserting unjust enrichment must allege that another has received a benefit, the retention of which would be inequitable.  *See Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004); *Unisys Corp.*, 637 N.W.2d at 157; *HPI Health Care Servs., Inc., v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).  Frontier maintains that the presence of a CBA somehow prohibits Plaintiffs' claims for unjust enrichment.  However, unjust enrichment is a doctrine that 'evolved from the most basic legal concept of preventing injustice.'"  *In re Estate of Roethler*, 801 N.W.2d 833, 845 (Iowa 2011) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)).  To recover for unjust enrichment, [the plaintiff] must show: (1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.  *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n,* 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting *Palmer*, 637 N.W.2d at 154–55).

It is undisputed that the Plaintiffs were flight attendants who gave "concessions" to Frontier in the form of wage and benefit reductions.  Plaintiffs were employed by Frontier for varying amounts of time and, therefore, the value of their wage and benefit concessions were

different.  However, there is no question that Frontier received the value of these concessions.  It is these concessions that form the basis of Plaintiffs' claims of unjust enrichment.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully requests this Court to deny the Defendant's Motion to Dismiss.

Respectfully submitted,

*/s/ Kellie L. Paschke*_____
Kellie L. Paschke AT# 0006038
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
Telephone:     (515) 987-0022
Facsimile:     (515) 987-6972
E-Mail:  kellie@splawiowa.com
E-Mail:  beth@splawiowa.com

 */s/ Jason D. Walke*_____
Jason D. Walke, AT# 0008230
WALKE LAW, LLC
204 West Hickman Road
Waukee, IA  50263
Telephone:  (515) 421-4026
Facsimile: (515) 216-2261
E-Mail:  jwalke@walkelaw.com
E-Mail:  nphifer@walkelaw.com

ATTORNEYS FOR PLAINTIFFS