IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ADELINE CLARK, *et. al*, | ) | Case No. 4:19-cv-00012-JEG-RAW |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT FRONTIER** |
| v. | ) | **AIRLINES, INC.'S MOTION TO** |
| | ) | **DISMISS PLAINTIFFS' FIRST** |
| FRONTIER AIRLINES, INC., | ) | **AMENDED AND SUBSTITUTED** |
| | ) | **COMPLAINT** |
| Defendant. | ) | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ 1
INTRODUCTION .......................................................................................................................... 2
STATEMENT OF FACTS ............................................................................................................. 3
    A.    The Parties ................................................................................................................ 3
    B.    2011 Frontier-AFA Collective Bargaining Agreement And March 15, 2017 Equity Participation Letter Of Agreement ...................... 3
    C.    Plaintiffs' Grievances Under The Collective Bargaining Agreement, And Their First Lawsuit ............................................................. 4
    D.    The Arbitration Board's Unanimous Decision Rejecting Plaintiffs' Claim ..................................................................................................... 5
    E.    The Plaintiffs' Second Lawsuit ................................................................ 6
ARGUMENT .................................................................................................................................. 6
    I.    PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT SHOULD BE DISMISSED BECAUSE THE FIRST AMENDED COMPLAINT FAILS TO ESTABLISH A DUE PROCESS VIOLATION OR ANY OTHER BASIS FOR JUDICIAL REVIEW OF THE ARBITRATION BOARD'S DECISION ............................... 8
    II.    PLAINTIFFS' EQUITABLE CLAIMS, FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT, SHOULD BE DISMISSED. ........................ 17
CONCLUSION ............................................................................................................................. 20

**INTRODUCTION**

Plaintiffs, approximately 100 former flight attendants for Defendant Frontier Airlines, Inc. ("Frontier" or the "Company"), contend that Frontier breached Article 24 of the collective bargaining agreement ("CBA") between Frontier and the Association of Flight Attendants-CWA (the "AFA" or the "Union") when, pursuant to a Letter of Agreement (the "Equity Participation LOA") with the AFA, it paid approximately $40 million to currently-employed flight attendants, but did not make any payments to persons (like Plaintiffs) who were no longer employed by Frontier.  Plaintiffs assert claims for breach of CBA, promissory estoppel, and unjust enrichment. In their prior, virtually-identical lawsuit, this Court dismissed Plaintiffs' claim for breach of CBA on the basis that the claim was a "minor dispute" under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, and therefore subject to the exclusive arbitral jurisdiction of the Frontier Flight Attendants' System Board of Adjustment (the "Arbitration Board" or the "Adjustment Board").  The Adjustment Board later conducted a hearing during which Plaintiffs were afforded a full and fair opportunity to present their case, including by way of testimonial and documentary evidence, oral argument and post-hearing briefing, and they were represented by counsel of their own choosing.  A neutral, highly-respected labor arbitrator, with substantial experience in the airline industry, issued a comprehensive and well-reasoned decision rejecting Plaintiffs' claims.

Plaintiffs allege in their First Amended And Substituted Complaint (the "FAC") (ECF No. 10) that there was a due process violation in connection with the Adjustment Board's decision, claiming: (i) the Board's composition was improper, because both the Company and Union designees did not agree with Plaintiffs' position and/or the Plaintiffs did not participate in the selection of the neutral arbitrator who actually decided the case; (ii) the participation of the

Company- and Union-designated Board members was improper because they allegedly were personally involved in the negotiation of the Equity Participation LOA and/or the processing of Plaintiffs' grievances; and (iii) Frontier's denial of Plaintiffs' request to provide free transportation to the hearing location in Denver for all 100 grievants allegedly restricted their participation in the arbitration hearing.  As demonstrated below, none of these assertions establishes a due process violation and, moreover, Plaintiffs' claims for promissory estoppel and unjust enrichment are invalid as a matter of Iowa law on account, *inter alia*, of the existence of express contracts addressing the same subject matter as those claims.  Plaintiffs' lawsuit should be dismissed, once and for all, with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[1]

### A. The Parties

Frontier is a commercial airline and a "carrier" within the meaning of the RLA.  (FAC ¶ 6.)  Plaintiffs are approximately 100 former Frontier flight attendants.  During at least part of their employment with Frontier, Plaintiffs (like all other Frontier flight attendants) were represented for collective bargaining purposes under the RLA by the AFA.  (*See id.* ¶ 7.)

### B. 2011 Frontier-AFA Collective Bargaining Agreement And March 15, 2017 Equity Participation Letter Of Agreement

On October 14, 2011, Frontier and the AFA entered into their first CBA.  (*See* FAC ¶ 7.)  This CBA, among other things, memorialized certain cost concessions which were applied to the flight attendant workforce and intended to ameliorate Frontier's then-current financial problems.  (*See id.* Ex. 2 at ECF pp. 13-14.)  Article 24 of the CBA (titled "Equity, Profit-Sharing, and

---

[1]   For purposes of this motion only, Frontier accepts as true the well-pleaded facts in Plaintiffs' FAC.

Wage & Benefit Snapbacks") provided that "Flight attendants will be entitled to equity in the Company (the 'Equity Participation') as described" in Article 24(A) and that "Equity Participation as set forth in Paragraph A . . . will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012." (*Id.* ¶¶ 8, 9.) Each of the Plaintiffs was on the seniority list as of January 1, 2012, but left Frontier's employment prior to March 15, 2017. (*See id.* ¶¶ 11, 13.)

On March 15, 2017, pursuant to the RLA, Frontier and the AFA entered into the Equity Participation LOA under which Frontier would pay $40 million in satisfaction of its obligations with respect to Equity Participation and Article 24A of the CBA. (FAC ¶ 14.) The LOA specified further that "the Union would have sole authority to determine which flight attendants on the seniority list as of January 1, 2012 would be eligible for a share of the Equity Payment." (*Id.* ¶ 15.) The AFA ultimately determined that only those Frontier flight attendants who were on the seniority list as of both January 1, 2012 and March 15, 2017 would be eligible to receive a portion of the Company's $40 million payment. (*Id.* ¶ 16.) Because they had ceased their employment with Frontier before March 15, 2017, Plaintiffs did not receive a payment. (*See id.* ¶ 17.)

### C. Plaintiffs' Grievances Under The Collective Bargaining Agreement, And Their First Lawsuit

In May and June of 2017, Plaintiffs filed grievances under the CBA, contending that they were "entitled to a share of the Equity Payment due to their placement on the flight attendant seniority list as of January 1, 2012." (FAC ¶ 18.) Frontier denied those grievances on June 30, 2017, and Plaintiffs thereafter appealed to the Arbitration Board. (*Id.* ¶¶ 23, 24.)

On December 28, 2017 (while their grievance appeals were still pending), Plaintiffs filed a lawsuit in this Court against Frontier, asserting claims for breach of CBA, promissory estoppel,

4

and unjust enrichment.  (Complaint, *Clark, et al. v. Frontier Airlines, Inc.* ("*Clark I*"), No. 4:17-cv-00452-JEG-HCA (S.D. Iowa Dec. 28, 2017) (ECF No. 1).)  All of Plaintiffs' claims were premised on their contention that they had a right to receive a payment under Article 24 of the CBA.  Frontier filed a motion to dismiss on April 12, 2018.  Ultimately, upon Frontier's motion, the Court dismissed Plaintiffs' claim for breach of CBA because the claim constituted a "minor dispute" under the RLA over which the Court lacked subject-matter jurisdiction.  (Report and Recommendation on Defendant's Motions to Dismiss Plaintiffs' Complaint and to Transfer Pursuant to 28 U.S.C. § 1404 ("R&R"), *Clark I* (Aug. 1, 2018) (ECF No. 27) at 8-14; Order Adopting Report and Recommendation ("Order"), *Clark I* (Aug. 20, 2018) (ECF No. 28).)  The Court dismissed Plaintiffs' two state-law claims for lack of supplemental jurisdiction.  (*See* R&R at 14-16; Order.)

        D.       **The Arbitration Board's Unanimous Decision Rejecting Plaintiffs' Claim**

An evidentiary hearing before the Arbitration Board was conducted on March 20, 2018, in which Plaintiffs (represented by the same counsel as in this lawsuit), Frontier, and the AFA participated.  (*See* FAC ¶ 29.)  The Arbitration Board entered an Opinion and Award on October 23, 2018, unanimously denying the Plaintiffs' grievance on the merits; the decision was authored by the Board's neutral chairman.  (*See Clark v. Frontier Airlines, Inc.* ("*Clark Arbitration*") (LaRocco, Arb., Oct. 23, 2018) (attached as Exhibit 1 to Declaration Of Chris A. Hollinger In Support Of Defendant Frontier Airlines, Inc.'s Motion To Dismiss Plaintiffs' First Amended And Substituted Complaint ("Hollinger Decl.")) (*Clark Arbitration* Decision); *see also* FAC ¶ 34.)  The neutral arbitrator first ruled that the Board's composition was fully compliant with Article 19 of the CBA and the RLA, rejecting Plaintiffs' objections that the Board was not properly constituted.  (*Clark Arbitration* Decision at 10.)  The Board further held that Article 24(A) of the CBA ceased to be effective and was superseded by the cash payment

5

provisions set forth in the March 15, 2017 Equity Participation LOA, and that Plaintiffs had no rights under that LOA. (*Id.* at 32.) Lastly, the Board ruled that, prior to March 15, 2017, the Plaintiffs had not acquired any permanent, vested right to receive payments from the subsequently-established $40 million fund. (*Id*. at 37.)

      E.      **The Plaintiffs' Second Lawsuit**

On January 9, 2019, Plaintiffs filed a Complaint in this case (*Clark II*) that was virtually identical to the Complaint in *Clark I*. Frontier filed a motion to dismiss on April 5, 2019, in which it argued, *inter alia*, that Plaintiffs' Complaint contained no allegations to support judicial review of the *Clark Arbitration* decision under the RLA. (*See* ECF No. 6-1 at 8-9.) In their brief in resistance (ECF No. 9 ["Opp."]), Plaintiffs tried to cure the deficiencies in their Complaint – but, as Frontier demonstrated in its reply brief on April 26, 2019 (ECF No. 11), Plaintiffs' efforts were unavailing. On the same day, April 26, Plaintiffs filed their FAC, asserting the same claims for breach of CBA, promissory estoppel and unjust enrichment, and adding a few new allegations purportedly in support of their theory that there was a due process violation in connection with the *Clark Arbitration*. (*See* ECF. No. 10.)

## ARGUMENT

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *See, e.g.*, *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). To avoid dismissal, the Plaintiffs' FAC must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 527 (8th Cir. 2017) ("Courts 'are not bound to accept as true a legal conclusion couched as a factual

6

allegation.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  If a court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed.  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

      Moreover, while the record on a Rule 12(b)(6) motion is far more circumscribed than for a summary judgment motion, the Court still may consider matters which are appropriate for judicial notice and documents which are referred to or embraced by the FAC.  *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion . . .  Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion.") (quotation omitted); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleading . . .  Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.") (citation and quotation omitted).  Accordingly, it is appropriate for the Court to consider the content of the Board's decision in the *Clark Arbitration,* as well as associated hearing transcripts, exhibits and correspondence, when ruling on the instant motion to dismiss.

**I.     PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT SHOULD BE DISMISSED BECAUSE THE FIRST AMENDED COMPLAINT FAILS TO ESTABLISH A DUE PROCESS VIOLATION OR ANY OTHER BASIS FOR JUDICIAL REVIEW OF THE ARBITRATION BOARD'S DECISION.**

Although Count One of the FAC is nominally couched as a *de novo* claim for breach of CBA, there is no dispute that Plaintiffs actually must satisfy the RLA's requirements for judicial review of an arbitration decision.  (*See* Opp. at 7-8 (asserting that Court has subject-matter jurisdiction over claim for breach of CBA based on RLA's provisions for judicial review of arbitration decisions).  As the Supreme Court explained in *Andrews v. Louisville & Nashville Railroad Company*, 406 U.S. 320, 325 (1972), "in at least some situations the [Railway Labor] Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another.  A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding.  ***He is limited to the judicial review of the Board's proceedings that the Act itself provides.***"  (Emphasis added; citations omitted.)

It is well-established that "the judicial review of the Board's proceedings that the [Railway Labor] Act itself provides," *id.*, is "**among the narrowest known to the law**."  *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (emphasis added; quotation marks omitted); *see also Union Pac. R.R. v. United Transp. Union*, 23 F.3d 1397, 1399 (8th Cir. 1994); R&R at 13-14.  As a matter of statutory text, the RLA authorizes a district court to set aside an arbitration decision in only three situations:  (1) the Board failed to comply with the requirements of the RLA; (2) the Board failed to conform or confine itself to matters within its jurisdiction; and (3) fraud or corruption on the part of a Board member.  *See* 45 U.S.C § 153 (First) (q); *Sheehan*, 439 U.S. at 93.  There are no allegations in the FAC which support any of the statutorily-enumerated grounds for judicial review, and Plaintiffs have never claimed otherwise.  Instead,

Plaintiffs assert that judicial review is available here on the basis of an alleged due process violation. (*See* Opp. at 7-8.) Although not specifically included in the RLA's judicial review provision, courts have recognized due process violations as a possible basis for setting aside RLA arbitration decisions. This includes the Eighth Circuit. *See Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 997 (8th Cir. 2002). As set forth below, Plaintiffs are manifestly unable to establish a violation of due process.

In evaluating Plaintiffs' due process claim, two points should be emphasized at the outset.

***First***, the composition of the Board for the *Clark Arbitration* (i.e., one Company designee, one Union designee, and one neutral arbitrator), in and of itself, provides no support for an alleged due process violation – and, to the extent Plaintiffs' claim is based on the Board's composition (*see, e.g.,* FAC ¶ 29; Opp. at 8-9), it should be summarily rejected. Plaintiffs are precluded from re-litigating the validity of the Board's composition – an issue decided against them in *Clark I*, where this Court ruled as follows: "Bias cannot be presumed. That the parties appointing a majority of the members of the arbitration panel are adverse to plaintiffs does not alone mean arbitration is futile." (R&R at 13.) Plaintiffs did not object to the R&R in *Clark I*, nor did they appeal the District Court's dismissal of their lawsuit. *See, generally, Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir. 1979) (listing elements for collateral estoppel/issue preclusion under federal law). Moreover, as Frontier has demonstrated previously (*see* ECF No. 11 at 2-4), numerous courts have considered and rejected the contention that the decisions of RLA arbitration tribunals can be vacated simply because a majority of the arbitration tribunal is composed of carrier and union-appointed members whose interests may be aligned in a given case. *See, e.g., Wells v. Southern Airways, Inc.*, 616 F.2d 107, 110 (5th Cir. 1980) (RLA

imposes on board of adjustment members an obligation to conduct a "full and fair hearing" and also "impose[s] on individual arbitrators a duty to adjudicate particular cases fairly without regard to their institutional predilections"); *Cunningham v. United Airlines, Inc.*, 2014 WL 441610, at *6 (N.D. Ill. Feb. 4, 2014), *aff'd sub nom. Cunningham v. Air Line Pilots Ass'n, Int'l*, 769 F.3d 539 (7th Cir. 2014) (explaining that "just because parties appointing members may disagree with the plaintiffs 'on the merits of their ... claim[,] does not mean that resort to the Adjustment Board would be absolutely futile.'") (quoting *Bautista v. Pan Am. World Airways, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987) (holding that mere disagreement between plaintiff employees and union on the merits of a grievance was insufficient to remove the dispute from the Adjustment Board's jurisdiction)); *Addington v. US Airline Pilots Ass'n*, 588 F. Supp. 2d 1051, 1063-64 (D. Ariz. 2008) ("The fact that the board is composed of union and company representatives does not by itself render the process futile.").

The Eighth Circuit's decision in *McCormick v. Aircraft Mechanics Fraternal Ass'n*, 340 F.3d 642 (8th Cir. 2003), is also instructive. There, a group of furloughed Northwest Airlines ("Northwest") employees, and former members of the Aircraft Mechanics Fraternal Association ("AMFA"), claimed they were entitled to be recalled to jobs with Northwest based on a Northwest-AMFA CBA which was entered into at a time when they were no longer represented by AMFA. *Id.* at 644. Both Northwest and AMFA disagreed with the plaintiffs' interpretation of the CBA. *Id.* The Eighth Circuit held that the plaintiffs had no claim for breach of the duty of fair representation against AMFA, because AMFA was not the plaintiffs' collective bargaining representative at the time of the events in question. *Id.* at 645-46. The Eighth Circuit further held that, because the plaintiffs had no such claim against the union, they

could not maintain their breach of CBA claim against Northwest in court. The RLA's arbitration procedures were the plaintiffs' only recourse. *See id.* at 646.

***Second,*** as this Court held in *Clark I*, "[n]o due process deprivation involving alleged bias of a majority of the Adjustment Board members can have occurred until it reveals itself. Bias cannot be presumed." (R&R at 13.) And, in determining whether Plaintiffs can maintain a claim for judicial review on this basis, it is important to keep in mind that "even within the circuits that recognize due process as a ground for review, courts have generally construed such procedural rights narrowly." The Railway Labor Act 7-86 & n.313 (4th ed. 2016) (citing decisions). The Eighth Circuit's decision in *Goff* proves the point. There, in a case involving the decision of an RLA Public Law Board, the court explained that "due process requires that: (1) the Board be presented with a 'full statement of the facts and all supporting data bearing upon the disputes,' 45 U.S.C. § 153 First (i); and (2) the '[p]arties may be heard either in person, by counsel, or by other representatives . . . and the . . . Board shall give due notice of all hearings to the employee.' 45 U.S.C. § 153 First (j)." *Goff*, 276 F.3d at 997. In this case, there is no dispute that Plaintiffs received notice of the *Clark Arbitration* hearing, that they appeared through counsel of their own choosing, and that they had a full and fair opportunity to present all the evidence and arguments in support of their claims. Plaintiffs have never contended otherwise.

\* \* \*

In light of the new allegations in the FAC, as well as their arguments in opposition to Frontier's motion to dismiss the original Complaint, Plaintiffs' theory of an alleged due process violation appears to be based on the following contentions: (i) the Board's composition was allegedly improper, either because both the Company and Union designees did not agree with Plaintiffs' position or because the Plaintiffs did not participate in the selection of the neutral

11

arbitrator; (ii) additionally, the participation of Company-designated Board member Howard Diamond and Union-designated Board member Ed Gilmartin allegedly prevented Plaintiffs from receiving a fair hearing because both Diamond and Gilmartin were personally involved in the negotiation of the Equity Participation LOA and/or because Gilmartin made an objection during the hearing which was over-ruled by the neutral arbitrator; and (iii) Frontier's denial of Plaintiffs' pre-hearing request to provide free transportation to the hearing location in Denver for all 100 grievants allegedly breached the CBA and restricted their participation in the arbitration hearing.  All of these contentions are meritless.

***Board Composition.***  With respect to Plaintiffs' complaint that the Company- and Union-designated Board members both disagreed with their position (*see* Opp. at 8), Plaintiffs' reliance on the D.C. Circuit's 70-year-old decision in *Edwards v. Capital Airlines, Inc.*, 176 F.2d 755 (D.C. Cir. 1949), is woefully misplaced.  That decision is inconsistent with the Eighth Circuit's decision in *McCormick* as well as the other, more recent decisions discussed above.  Moreover, the arbitration tribunal in *Edwards* was comprised of two union-designated members, who were opposed to the plaintiffs' position, and two employer-designated members, who were indifferent – there was no neutral arbitrator.  *See id.* at 759.  In the *Clark Arbitration*, in contrast, there was a neutral arbitrator and it was the neutral arbitrator who rendered the decision (in which the Company- and Union-designated Board members merely concurred).[2]  Simply put, the outcome of the *Clark Arbitration* would have been the same even if there had been no Company- and Union-designated Board members.  *Cf. Arnold v. United Air Lines, Inc.*, 296 F.2d 191, 195 (7th Cir. 1961) (rejecting due process challenge to adjustment board decision where plaintiffs

---

[2]   *See* Hollinger Decl.; ¶ 3 & Ex. 1 at p. 38.

alleged that the employer- and union-designated board members were biased against them but "the [challenged] determination was here made by an admittedly impartial referee").

With respect to Plaintiffs' apparent complaint that they did not participate in the selection of the neutral arbitrator or other Board members (*see* Opp. at 8-9; FAC ¶ 29), the court in *Cunningham* said it best: "[W]e reject any possible contention made by Plaintiffs 'that a System Board's holding must be set aside because there was no one on the board "partisan" to the employee's interests.' Other courts have also upheld systems boards where the party-appointed members sit with a neutral arbitrator, including where the union and company disagree with the grievant's contract interpretation." 2014 WL 441610, at *6 (*quoting Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295, 299 (5th Cir. 1981); *citing Stumo v. United Air Lines, Inc.*, 382 F.2d 780, 787 (7th Cir. 1967), and *Haney v. Chesapeake & Ohio R.R. Co.*, 498 F.2d 987, 992 (D.C. Cir. 1974)).

***Involvement Of Company- And Union-Designated Board Members.*** Plaintiffs' complaint that the Company-designated Board member (Howard Diamond) and the Union-designated Board member (Ed Gilmartin) had personal involvement in the negotiation of the Equity Participation LOA and the processing of their grievances similarly fails to establish a due process violation.[3] (*Cf.* FAC ¶¶ 14, 23, 25, and 30-33; Opp. at 9.) The Supreme Court in *Withrow v. Larkin*, on which Plaintiffs previously relied (*see* Opp. at 9), held that there was no Due Process Clause violation from a state regulatory framework under which the same

---

[3] Plaintiffs' allegation that they were not advised of the identity of the Company- and Union-designated Board members until "[i]mmediately prior to the hearing," FAC ¶ 30, is demonstrably incorrect. As the referenced notification to Plaintiffs makes clear, Plaintiffs were informed of the identity of the Board members on March 16, 2018 – the hearing took place on March 20, 2018, four days later. (*See* Hollinger Decl. ¶ 4 & Ex. 2 [March 16, 2018 E-Mail From Jeff Bartos (Union Counsel) To Kellie Paschke (Plaintiffs' Counsel)].)

13

administrative agency was both the investigator/prosecutor and the decision-maker, and specifically rejected the contention that "the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication." 421 U.S. 35, 47 (1975) (noting that such contention failed, *inter alia*, to "overcome a presumption of honesty and integrity in those serving as adjudicators"). The Court discussed many scenarios (just like the situation in the *Clark Arbitration* as described by Plaintiffs), where judges have familiarity with the underlying facts of a proceeding, and concluded: "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate . . . due process of law." *Id*. at 56; *see also Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702-03 (1948) (stating that no decision of the Supreme Court "would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law."). Moreover, the two constitutionally-problematic situations identified by the *Withrow* Court, i.e., when "the adjudicator has a pecuniary interest in the outcome" or "has been the target of personal abuse or criticism from the party before him, 421 U.S. at 47 (footnotes omitted), are inapplicable here.[4]

In this case, Mr. Diamond and Mr. Gilmartin are alleged to have been involved in the negotiation of the Equity Participation LOA and the processing of Plaintiffs' grievances. (*See* FAC ¶¶ 14, 23, 25, and 30-33.) These Board members' involvement in the underlying dispute

---

[4] Plaintiffs previously relied on *Gibson v. Berryhill*, 411 U.S. 564 (1973) (*see* Opp. at 9), another case involving the Due Process Clause, where all of the decision-makers stood to reap a "personal benefit" from ruling in a particular manner. *See* 411 U.S. at 578. The FAC contains no allegation that Mr. Diamond or Mr. Gilmartin would receive any benefit from denying the Plaintiffs' grievances and, in any event, the arbitration decision was rendered by the neutral arbitrator.

between the parties is far less prominent than the examples cited with approval by the Supreme Court in *Withrow*, and clearly does not give rise to a due process violation.[5] Indeed, as the Fifth Circuit explained in *Wells*, while the RLA "imposes upon the System Board a duty to give the parties 'a full and fair hearing,'" it nonetheless "expressly provides that '(n)o arbitrator (except the neutral arbitrator) shall be incompetent to act as an arbitrator ***because of his interest in the controversy to be arbitrated, or because of his connection with or partiality to either of the parties to the arbitration.***'" 616 F.2d at 110 (*quoting* 45 U.S.C. §§ 157 (Third) (b) & (d)) (emphasis added).

Plaintiffs previously relied on *International Association of Machinists and Aerospace Workers v. Metro-North Commuter Railroad*, 24 F.3d 369, 371-72 (2d Cir. 1984). (*See* Opp. at 9.) That case involved a jurisdictional dispute between two unions, which is not the situation here, and is "a largely anomalous decision that has not been cited for [the holding at issue] by any other court in the more than ten years since it was published, and [] its reasoning is unpersuasive." *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*, 369 F. Supp. 2d 982, 989 (N.D. Ill. 2005), *aff'd*, 446 F.3d 714 (7th Cir. 2006). Moreover, the Second Circuit's holding, i.e., that there was a due process violation because an employee of one of the disputant unions was a board member even though the decision was issued by a neutral referee, is fundamentally irreconcilable with *Withrow* and the cases discussed therein, as well as the RLA decisions discussed above. This Court should not give any credence to that decision.

---

[5] Insofar as Plaintiffs are actually basing their due process theory on the allegation that "Board member Gilmartin personally objected to Plaintiffs' line of questioning while presiding over the hearing," the short answer is that Mr. Gilmartin was "reminded that Board members were not permitted to participate in such a way." (FAC ¶ 32.) Plaintiffs do not allege that Mr. Gilmartin's objection caused them any harm.

15

***Not Providing Free Transportation For 100 Grievants.*** Plaintiffs' complaint that Frontier breached the CBA by failing to provide free transportation to the hearing location in Denver for all 100 grievants (*see* FAC ¶¶ 27-28 & 41) does not raise a due process violation – it raises a "minor dispute." And, just like their underlying claim to a monetary payment pursuant to the Equity Participation LOA, their claim to free transportation (which Frontier disputes) is subject to the mandatory and exclusive arbitral jurisdiction of the Board of Adjustment. *See U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*, 859 F. Supp. 2d 283, 303 (E.D.N.Y. 2012) (addressing union's claim that airline should be ordered "to restore the grievance and arbitration process as previously practiced by the parties," and holding that "[b]ecause the parties' disagreements over grievance and dispute resolution procedures are minor, the court does not have jurisdiction."); *Local 591, Transp. Workers Union of Am. v. Am. Airlines, Inc.*, 2015 WL 3852958, at *4 (N.D. Ill. June 19, 2015) ("Defendant argues that plaintiffs' first claim . . . is nothing more than a dispute over the processing and scheduling of grievances, and, because this dispute implicates a contractual right, can properly be classified as minor under the RLA. The court agrees."); *see* R&R at 9-12. Moreover, although they were aware of the parties' dispute over free transportation well in advance of the arbitration hearing (*see* FAC ¶¶ 27-28), Plaintiffs do not (and cannot) allege they raised this issue with the neutral arbitrator. (*See also* Hollinger Decl. ¶ 5 & Ex. 3 [March 5, 2018 E-Mail From Kellie Paschke (Plaintiffs' Counsel) To Jeff Bartos (Union's Counsel)] ("We will simply have to agree to disagree on the meaning of that [CBA] section, and our Grievants will have to make their own reservations.").) The Plaintiffs have therefore waived this objection. *See Goff*, 276 F.3d at 998 ("'The parties to an arbitration may waive procedural defects by failing to bring such issues to the arbitrator's attention in time to cure the defects.' *Bhd. of Locomotive Eng'r v. Union Pac. R.R.*,

134 F.3d 1325, 1331 (8th Cir. 1998). Goff should have raised his procedural objection while the Board had an opportunity to act on it; therefore, Goff waived any procedural defect by not raising it before the Board.").

* * *

The Plaintiffs were afforded a full and fair opportunity to present their case, including by way of testimonial and documentary evidence, oral argument and post-hearing briefing, and they were represented by counsel of their own choosing. A neutral, highly-respected labor arbitrator, with substantial experience in the airline industry, issued a comprehensive and well-reasoned 38-page decision rejecting Plaintiffs' position on the merits and on the composition of the Board. In sum, Plaintiffs received all the process they were due under the RLA and under the CBA. They lost their case not because of any due process violation on the part of the Adjustment Board – but because their claim was weak.

The FAC fails to plausibly establish any due process violations stemming from the *Clark Arbitration* decision and, as a result, Plaintiffs' claim for breach of CBA should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]

## II. PLAINTIFFS' EQUITABLE CLAIMS, FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT, SHOULD BE DISMISSED.

Plaintiffs' state law claim for promissory estoppel should be dismissed for three main reasons.

*First*, under Iowa law, promissory estoppel is a quasi-contract doctrine meant to enforce non-contractual promises. *Farm & Ranch Servs., Ltd. v. LT Farm & Ranch, LLC*, 779 F. Supp.

---

[6] To be clear, Frontier is not seeking dismissal pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction, but rather pursuant to Rule 12(b)(6) for failure to state a claim. Count One, properly understood, is a claim for judicial review of an RLA arbitration decision and the Court should dismiss that claim on the merits.

2d 949, 965 (S.D. Iowa 2011).  The doctrine is invoked to "imply a contract in law when none exists."  *PFS Distrib. Co. v. Raduechel*, 387 F. Supp. 2d 1020, 1026 (S.D. Iowa 2005).  Accordingly, promissory estoppel claims cannot be maintained if there is a valid, express contract between the parties concerning the subject matter of the claim.  *See Farm & Ranch Servs. Ltd.*, 779 F. Supp. 2d at 965 (dismissing promissory estoppel claim upon finding that "a valid express contract governs the dispute between [the parties]"); *DeJong v. City of Sioux Ctr.*, 980 F. Supp. 1010, 1014 (N.D. Iowa 1997) ("The court finds that promissory estoppel cannot be used in this case . . . because the parties executed a fully integrated written contract.").  There are express contracts addressing the same subject matter as the Plaintiffs' promissory estoppel claim, as evidenced by Plaintiffs' claim in Count One for breach of CBA.

*Second*, while Plaintiffs have added an allegation that Frontier "made the promises through multiple presentations and documents presented to Plaintiffs and other flight attendants during the course of CBA negotiations" (FAC ¶ 46), this one-sentence conclusion is insufficient to maintain a promissory estoppel claim.  Such a claim cannot be maintained without identifying at least some of the who, what, when, where, and how of the alleged promise.  *See, generally, Mobro, Inc. v. VVV Corp.*, 2012 WL 2429242, at *7 (N.D. Iowa June 26, 2012) (dismissing promissory estoppel claim at the pleadings stage for lack of a clear and definite promise, where plaintiff's allegations failed to specify who was intended to satisfy the defendant's promise).  Moreover, it is manifestly implausible that Frontier made promises during CBA negotiations in 2011 about Plaintiffs' entitlement to payments under an LOA that was not contemplated by Article 24 of the CBA and did not even come into existence until March of 2017.

*Third*, any such plausibly-alleged extra-contractual promises to Union-represented flight attendants would be void and unenforceable as a matter of federal labor law, *see Order of R.R.*

*Telegraphers v. Railway Express Agency*, 321 U.S. 342, 346-47 (1944), and a state-law claim based on such "side deals" would be preempted by the RLA. *See, e.g., Espinal v. Northwest Airlines, Inc.*, 90 F.3d 1452, 1458-59 (9th Cir. 1996); *Zumbrun v. Delta Airlines, Inc.*, 1996 U.S. Dist. LEXIS 20642 (C.D. Cal. June 24, 1996); *Williams v. American Eagle Airlines, Inc.*, 702 S.E.2d 541, 546 (N.C. Ct. App. 2010).

\* \* \*

Plaintiffs' state-law claim for unjust enrichment should similarly be dismissed. Under Iowa law, express contracts and implied contracts cannot coexist with respect to the same subject matter, and the law does not imply a contract when there is an express contract. See *GreatAmerica Leasing Corp. v. Rohr–Tippe Motors, Inc.*, 387 F. Supp. 2d 992, 997 (N.D. Iowa 2005) (recognizing the "near universal rule of contracts that an express contract and an implied contract cannot co-exist"). When a court determines that an express contract exists between the parties as to the subject matter of the unjust enrichment claim, as this Court did in *Clark I*, the plaintiffs' unjust enrichment claim fails because an express and implied contract cannot co-exist. *See Dean Snyder Constr. Co. v. Travelers Prop. Cas. Co. of Am.,* 173 F. Supp. 3d 837, 855 (S.D. Iowa 2016) (dismissing unjust enrichment claim because the subject matter of the claim was covered by an express agreement between the parties); *EAD Control Sys., LLC v. Besser Co. USA,* 2012 WL 2357572, at *6 (N.D. Iowa June 19, 2012) (barring claim of unjust enrichment where express contract covered the subject matter of the unjust enrichment claim, and noting that "unjust enrichment is not a mechanism for shifting a risk one has assumed under contract.") (internal quotation marks omitted). Here, there are express contracts addressing the same subject matter as Plaintiffs' unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, Defendant Frontier Airlines, Inc. respectfully requests that this Court dismiss Plaintiffs' First Amended and Substituted Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

O'MELVENY & MYERS LLP

By */s/ Chris A. Hollinger*
    Chris A. Hollinger (*pro hac vice*)
    Two Embarcadero Center, 28th Floor
    San Francisco, CA 94111
    Telephone: (415) 984-8700
    E-mail: chollinger@omm.com

    Matthew C. McDermott
    Ryan G. Koopmans
    BELIN McCORMICK, P.C.
    666 Walnut Street, Suite 2000
    Des Moines, IA 50309-3989
    Telephone: (515) 283-4643; (515) 283-4617
    Facsimile: (515) 558-0643; (515) 558-0617
    E-mail:   mmcdermott@belinmccormick.com
                   rkoopmans@belinmccormick.com

    ATTORNEYS FOR DEFENDANT
    FRONTIER AIRLINES, INC.

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties to this action by serving a copy upon party listed below on May 10, 2019 by

☒ Electronic Filing System      ☐ Other _____

Signature:   */s/ Chris A. Hollinger*