IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ADELINE CLARK, et al.,

            Plaintiffs,

vs.

FRONTIER AIRLINES, INC.

            Defendant.

4:19-cv-00012-JEG-RAW

REPORT AND RECOMMENDATION
ON DEFENDANT FRONTIER
AIRLINES, INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED AND
SUBSTITUTED COMPLAINT

The above resisted motion [12] is before the Court. It has been referred to the undersigned for Report and Recommendation. 28 U.S.C. § 636(b)(1)(B),(C). It is fully submitted and determined on the motion papers. *See* LR 7(c).

Plaintiffs are some 100 flight attendants previously employed by defendant Frontier Airlines, Inc. ("Frontier"). Count I of the First Amended and Substituted Complaint ("Amended Complaint") is styled "Breach of Collective Bargaining Agreement" for which 28 U.S.C. § 1331 federal question jurisdiction is pleaded on the basis that the claim arises under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. Plaintiffs allege supplemental jurisdiction for common law claims of promissory estoppel and unjust enrichment in Counts II and III respectively. 28 U.S.C. § 1367(a). As explained below, the breach of contract claim in Count I is cognizable only as a petition for review of the Frontier Flight Attendants' System Board of Adjustment ("the Board") decision denying plaintiffs' grievances for alleged breach of the collective bargaining agreement in question.

**I.**

Frontier moves to dismiss plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). On such a motion the Court must take as true

all well-pleaded facts and "draw all reasonable inferences in favor of the non-moving party." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citing *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). The Court may not consider matters outside the pleadings but may consider documents "necessarily embraced by the pleadings." *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). These include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* at 505 (8th Cir. 2018) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)). The Amended Complaint alleges the adverse Board Decision (Am. Compl. [10] ¶ 34). That decision is the subject of the judicial review sought by plaintiffs. There is no question about its authenticity. The decision is necessarily embraced in the Amended Complaint. So, too, is a March 15, 2017 Letter of Agreement between Frontier and the Association of Flight Attendants-CWA ("the Union") the content of which is partially pleaded in the Amended Complaint and central to plaintiffs' claims. (*Id.* ¶¶ 14-17).

The following facts are pleaded in the Amended Complaint, or are necessarily embraced by it, and are taken as true for present purposes.

## II.

Frontier is a "carrier" within the meaning of the RLA. *See* 45 U.S.C. §§ 151 First, 181. (Am. Compl. [10] ¶ 6). On October 14, 2011 Frontier and the Union entered into a collective bargaining agreement ("CBA"). Article 24 of the CBA was entitled "Equity, Profit-Sharing, and Wage & Benefit Snapbacks." Part A of Article 24 (hereinafter "Article 24A") provided:

## A.  EQUITY PARTICIPATION

Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

1. The value of the Equity Participation is $16.0 million.

2. The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any higher rate offered to any other key stakeholder in the restructuring process.

3. The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

4. Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary drag along rights.

5. Vesting: The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments". To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%.[1]

(Hollinger Decl. Ex. 1 [12-2] at 3-4 ("Board Decision"); Am. Compl. [10] ¶ 8, Ex. 1 [10-1]).[2]

Article 24D added: "Equity Participation as set forth in Paragraph A . . . will be exclusively for Frontier Flight Attendants on the Frontier Attendant Seniority List as of January 1, 2012." (*Id.* ¶ 9, Ex. 1 [10-1]). Article 24 was intended to provide compensation to flight attendants for concessions made by them to help alleviate Frontier's then financial difficulties. (*Id.* ¶ 10, Ex. 2 [10-2]).

---

[1] There is a paragraph A.1 in Article 24, but no "A.1.a." The extra "a" is probably a scrivener's error.

[2] All citations to the Board Decision refer to the page of the decision, not the ECF Document page.

3

Each of the plaintiffs was on the Flight Attendant Seniority List as of January 1, 2012 but before March 15, 2017 had ended their employment with Frontier. (Am. Compl. [10] ¶¶ 11, 13). On March 15, 2017 Frontier and the Union signed a Letter of Agreement ("LOA") the terms of which required Frontier to pay $40 million in satisfaction of the Equity Participation provision in Article 24A, $36.5 million of which was to be paid to eligible flight attendants ("Equity Payment"). (*Id.* ¶ 13, *see* Paschke Decl. Attach. [15-1] at 1). The LOA was entitled "Equity Participation Payment." It specified the Union would have the "sole discretion" to determine which flight attendants on the seniority list as of January 1, 2012 would be eligible for a share of the payment. (Paschke Decl. Attach. [15-1] at 1; *see* Am. Compl. [10] ¶ 15). The Union determined that a flight attendant on the seniority list had to have been "continuously employed" with Frontier through March 15, 2017 in order to share in the Equity Payment. (Am. Compl. [10] ¶ 16). As they had ended employment before that date, plaintiffs were denied any share of the Equity Payment. (*Id.* ¶ 17).

On May 25, 2017 and June 13, 2017 plaintiffs, by their present counsel, filed grievances under the CBA claiming they were entitled to a share of the Equity Payment. (Am. Compl. [10] ¶ 18). On June 30, 2017, following telephone hearing, Frontier denied the grievances. (*Id.* ¶ 23). On July 13 and 14 plaintiffs appealed the denials and requested hearing before the Frontier System Flight Attendants' Board of Adjustment. (*Id.* ¶ 24). The Board was comprised of three members: Union representative Ed Gilmartin, Frontier representative Howard Diamond, and an arbitrator selected by the Union and Frontier to Chair the Board, John LaRocco. (*Id.* ¶¶ 26, 30-31; Hollinger Decl. Ex. 1 [12-2] at 2-3, 38). Hearing before the Board was held on March 20, 2018. (Am. Compl. ¶ 29). At the hearing plaintiffs unsuccessfully objected to the inclusion of Gilmartin and Diamond as members because of their involvement in the underlying grievance and matters which

gave rise to it. (*Id.* ¶ 31). The Board issued a decision on October 23, 2018 denying the grievances. (*Id.* ¶ 34; Board Decision [12-2] at 38). Plaintiffs filed the present action in this Court on January 9, 2019.

Additional pleaded or embraced facts are discussed below as they bear on the arguments of the parties.

## III.

This is the second time plaintiffs have sued essentially the same breach of the CBA and common law claims in this Court. The first was brought while the grievances were pending before the Board. *Clark et al. v. Frontier Airlines, Inc.*, 4:17-cv-00452-JEG-RAW (S.D. Iowa, filed December 28, 2017) ("*Clark 1*"). In *Clark 1* plaintiffs alleged original jurisdiction under 28 U.S.C. § 1337(a) on the basis their claims arose under the RLA, an Act of Congress regulating commerce. The Court dismissed the CBA breach claim because it presented a "minor" dispute under the RLA within the exclusive jurisdiction of the Board. The common law claims were dismissed because they clearly did not arise under the RLA and the contract claim having been dismissed for lack of subject matter jurisdiction, there was no claim within the Court's original jurisdiction to which supplemental jurisdiction of the common law claims could have attached. (*Clark 1*, Aug. 1, 2018 R. & R. [27] at 14-16; Aug. 20, 2018 Order Adopting R. & R. [28]). While plaintiffs again plead the same stand-alone CBA breach claim, for the reasons given in dismissing *Clark 1*, the Court lacks jurisdiction over such a claim. With the Board proceedings having been now concluded by final decision, the Court only has jurisdiction under the RLA to judicially review proceedings before the Board. *See Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 325 (1972) ("A party who has litigated an issue before the Adjustment Board on the merits . . . is limited to the judicial review of the Board's proceedings that the Act itself provides."); 45 U.S.C. § 153 First (q).

The parties' briefs reflect they understand Count I, the CBA breach claim, should be viewed as a petition for judicial review of the Board's decision, and it is in this context Frontier's motion to dismiss that claim will be considered.

## A.      Judicial Review of the Board Decision

The statutory scope of judicial review of Adjustment Board proceedings under the RLA is set out in 45 U.S.C. § 153 First (q). It is very narrow, indeed, "among the narrowest known to the law." *Union Pacific R.R. Co., v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam) (quotation marks omitted); *see Union Pacific R.R. Co. v. United Transp. Union*, 23 F.3d 1397, 1399 (8th Cir. 1994). Review is limited to three specific grounds:

> (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.

*Sheehan*, 439 U.S. at 93 (citing 45 U.S.C. § 153 First (q)); *see Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 996 (8th Cir. 2002). There is an unresolved split among the circuits concerning whether Adjustment Board proceedings may also be judicially reviewed for due process violations. *See Union Pacific R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen General Comms. of Adjustment*, 558 U.S. 67, 75, 81 (2009) (citing circuit split and concluding: "An answer to that question must await a case in which the issue is genuinely in controversy."). The Eighth Circuit has allowed limited review of RLA arbitration decisions for due process violations. *See Sullivan v. Endeavor Air, Inc.*, 856 F.3d 533, 537 (8th Cir. 2017) (citing *Goff*, 276 F.3d at 997). This Court must proceed accordingly.

As presented in their brief in resistance to the motion to dismiss, plaintiffs articulate three grounds for relief from the Board Decision. First, the Board failed to comply with the requirements of the RLA because the involvement of Union representative Gilmartin and Frontier representative

Diamond as members of the Board deprived plaintiffs of a "full and fair" hearing. Second, because of their interest and involvement in matters relating to the grievances, the participation of Gilmartin and Diamond as Board members also violated plaintiffs' due process rights. Third, the CBA gave plaintiffs a vested right in Equity Participation.[3]

Before addressing these issues it is appropriate to note two procedural matters. First, as this action was not filed as a petition for judicial review of the Board's decision, no petition has been transmitted to the Board nor has the Board filed the record of its proceedings, both as required by 45 U.S.C. § 153 First (q). The parties do not contend, and the Court does not believe, the Board record is necessary to determine Frontier's Rule 12(b)(6) motion which concerns itself only with the sufficiency of the Amended Complaint to state a claim for judicial review, but if judicial review proceeded beyond the pleadings, the Board record would have to be obtained. Second, the RLA provides that venue for a petition for judicial review is in the District Court "in which [the grievant] resides or in which is located the principal operating office of the carrier, or through which the

---

[3] The Amended Complaint alleges Frontier also breached the CBA by failing to provide "transportation accommodations" for the grievants to attend the hearing before the Board. (Am. Compl. [10] ¶ 41). The CBA contained a provision stating that a grievant, whether or not a Frontier employee, would be provided round-trip "space transportation on the lines of the Company" to and from the hearing location. (*Id.* ¶ 27). Frontier offered to provide transportation for testifying grievants from their last recorded domicile, but not for all 100 or so grievants. (Hollinger Decl. Ex. 3 [12-2 at 50]). For practical reasons this was unacceptable to grievants. (*Id.* at 49). Frontier asserts the issue was waived because it was not raised with neutral Board member LaRocco. There is no indication in the Board's decision that the issue was presented to it. Plaintiffs' brief in resistance to the motion to dismiss is silent on the issue and does not resist dismissal of this aspect of the CBA breach claim. Local Rule 7(e) requires a brief in resistance to a motion contain "a statement of the grounds for resisting the motion." In the circumstances, the Court considers the transportation issue in the CBA breach claim to have been waived. *See also Goff*, 276 F.3d at 998 (procedural defects in arbitration may be waived "by failing to bring [the issue] to the arbitrator's attention in time to cure the defects") (quoting *Bhd. of Locomotive Eng'rs Int'l Union v. Union Pacific R.R.*, 134 F.3d 1325, 1331 (8th Cir. 1998).

carrier operates." *Id.* § 153 First(p)(q). The Amended Complaint alleges Frontier's principal place

of business is in Colorado, though the Iowa Secretary of State has issued a Certificate of Authority

permitting Frontier to do business in Iowa, and apparently none of the plaintiffs are Iowa residents.

(Am Compl. [10] ¶¶ 1, 2). Frontier has not challenged, by Rule 12(b)(3) motion or otherwise,

venue in this district as the Amended Complaint has morphed into a petition for judicial review.

### 1.    Statutory Violation

Plaintiffs rely on 45 U.S.C. § 157 Third (b) in arguing the Board failed to comply with the

requirements of the RLA. That section requires an *arbitration* board to give the parties to a

controversy "a full and fair hearing." There is no counterpart in § 153 First. The Frontier System

Board of Adjustment was not an arbitration board governed by § 157. If a dispute is not resolved

in conference, by mediation, or the "appropriate adjustment board" the parties may agree to submit

the matter to a board of arbitration. *Id.* § 157 First. That did not occur here. However, in *Wells v.*

*S. Airways, Inc.*, 616 F.2d 107 (5th Cir.), *cert. denied*, 449 U.S. 862 (1980), the Fifth Circuit

applied the "full and fair hearing" clause of § 157 Third (b) in an airline System Board of

Adjustment case involving alleged union breach of the duty of fair representation. 616 F.2d at 109-

10. The court perceived a congressional intent in § 157 Third (b) and another subsection, Third (d)

which provides arbitrators are not disqualified by interest in the controversy or partiality toward a

party, *see infra* at 11-12, "to impose on individual arbitrators a duty to adjudicate particular cases

fairly without regard to their institutional predilections." *Id.* at 110; *see Cunningham v. United*

*Airlines, Inc.*, No. 13 C 5522, 2014 WL 441610, at *6 (N.D. Ill. Feb. 4, 2014) (quoting *Wells*),

*aff'd sub nom., Cunningham v. Air Line Pilots Ass'n, Int'l*, 769 F.3d 539 (7th Cir. 2014). For

present purposes this Court will consider that § 153 First (q) implicitly incorporates the same "full

and fair hearing" requirement.

Plaintiffs allege Gilmartin and Diamond had "close involvement in the grievance and underlying actions that gave rise to the grievance," namely negotiation of the CBA and LOA at issue. (*Id.* ¶¶ 30, 31, 33). Specifically, Diamond is alleged to "have signed, in part," the March 15, 2017 LOA as Frontier's General Counsel.[4] (*Id.* ¶ 14). Plaintiffs state they objected at hearing to the inclusion of Gilmartin and Diamond as Board members. (*Id.* ¶ 31). Their objection was rejected. (Board Decision [12-2] at 9-11). In their brief plaintiffs describe Gilmartin as "the senior legal counsel for the Union" who "played a lead role in negotiations on behalf of the Union" and "participated in subsequent negotiations during the 2014-2017 timeframe when the Union and Frontier were attempting to resolve certain issues" with respect to CBA Article 24. (Pl.'s Brief in Resist. [15] at 8). Diamond is said to have executed many documents on behalf of Frontier central to the case and was "the author of the initial letter to Plaintiffs, denying their request for equity payments." (*Id.*). The Amended Complaint implicitly claims plaintiffs could not get a fair hearing before the three-member Board when two of the members were appointed by parties adverse to plaintiffs, and had personal involvement in the subject of the grievances.

The Board Decision was authored by its Chairperson and neutral member, John LaRocco. He noted that the CBA established the "Frontier Flight Attendants' System Board of Adjustment." CBA Article 19B stipulated the Board "will be comprised of a Company Board Member, a Union Board Member, and a single neutral member (i.e. Chairperson)." (Board Decision [12-2] at 2). In rejecting the objection to Gilmartin and Diamond as Board members, LaRocco wrote that he, as

---

[4] Diamond signed the LOA for Frontier as its General Counsel and Secretary. (Paschke Decl. Attach. [15-1] at 3).

the neutral member, did not have any authority "to direct the parties to appoint or to refrain from appointing any particular individual as a member of the Board." (*Id.* at 10).

At this point, to put things in perspective, it is appropriate to give a brief review of the history of the RLA and the different types of dispute resolution mechanisms it incorporates. The Act established a National Railroad Adjustment Board ("NRAB"). 45 U.S.C. § 153 First. The NRAB has four divisions with jurisdiction over particular kinds of labor disputes. Each division is composed of an equal number of carrier and labor members with no neutral member required. *Id.* § 153 First (h). Section 153 also permits an individual carrier, system, or group of carriers and a class or classes of employees (by their representatives) to mutually agree to the establishment of a system, group, or regional Board of Adjustment. *Id.* § 153 Second. The relevant provisions limiting the scope of judicial review, specifying the three grounds on which a Board decision may be set aside, and the few procedural requirements which must attend Board proceedings are found in § 153 First (i), (j), and (q).

Originally, the RLA did not include air carriers. In 1936 the RLA was extended to common carriers by air, except for § 153. 45 U.S.C. § 181. The 1936 amendments also required every air carrier and its employees (acting through their representatives) to establish a Board of Adjustment by system, group, or region. 45 U.S.C. § 184. Airline industry practice has been to establish single carrier/single union boards referred to as "System Adjustment Boards" or "System Boards." The Railway Labor Act Ch. 7.V.F at 7-41 (Douglas W. Hall & Michael L. Winston eds.) (4th ed. 2016) ("RWA Treatise"). The Frontier Flight Attendants' System Board of Adjustment is such a Board.

Section 181's exclusion of § 153 left some question about the scope of judicial review of decisions by airline System Adjustment Boards. In *Int'l Ass'n of Machinists v. Cent. Airlines, Inc.*, 372 U.S. 682 (1963) the Supreme Court said the 1936 RLA amendments were generally aimed at

"extend[ing] to air carriers and their employees the same benefits and obligations available and applicable in the railroad industry." *Id.* at 685. This congressional intent has been taken by the Eighth Circuit and some other courts as requiring "identical court treatment of airline [B]oard decisions under section 184 and railroad [B]oard decisions under section 153 . . . ." *Hunt v. Nw. Airlines, Inc.*, 600 F.2d 176, 178 (8th Cir.) (per curiam), *cert. denied*, 444 U.S. 946 (1979); *see Sullivan*, 856 F.3d at 536.

System Boards are creatures of contract. It is not uncommon for railroad and airline System Boards like the Frontier Board to be comprised of three members, a carrier representative, a union representative, and a neutral chair. RWA Treatise Chs. 7.VI.B.1 at 7-50, 7.VII.B at 7-60. As noted, the NRAB divisions have equal numbers of labor organization and carrier representatives without a neutral, though in the event of deadlock a neutral referee is to be appointed to make the decision. 45 U.S.C. § 153 First (d). The involvement of union and carrier representatives as decision-makers in the resolution of RLA labor disputes has a long history under the Act and is embraced by it.

The Fifth Circuit's statement in *Wells* that arbitrators (referring to the System Board members in that case) must decide cases "without regard to their institutional predilections" is not entirely consistent with other authority on the subject. The Eleventh Circuit has stated:

> . . . Board members are not jurors; the Board is bipartisan rather than impartial and disinterested; and foreknowledge, which plaintiff considers a ground for vitiating the proceeding, is actually a usual, if not necessary, attribute of an arbitration under the Railway Labor Act.

*Henry v. Delta Airlines*, 759 F.2d 870, 872 (11th Cir. 1985) (per curiam) (an airline System Board case, quoting *Farris v. Alaska Airlines, Inc.*, 113 F. Supp. 907, 910 (W.D. Wash. 1953)). It has also been said that absent fraud or corruption, which has not been alleged, carrier and union Board members "are not expected to be neutral." RWA Treatise Ch. 7.VIII.B.3 at 7-83. If, as the Fifth Circuit considered, § 157 Third (d) pertaining to arbitrators applies to airline System Board

members, no union or carrier appointed Board member would "be incompetent to act as an arbitrator because of his interest in the controversy to be arbitrated, or because of his connection with or partiality to either of the parties to the arbitration." § 157 Third (d); *see id.* Second (a), (b). In any event, there is no statutory, or persuasive case law to which the Court has been referred, which would support the proposition underlying plaintiffs' argument that the fair hearing requirement is violated unless System Board members appointed by the union and carrier are disinterested and uninvolved in the matter being grieved.

In *Wells* the plaintiff claimed the Union breached its duty of fair representation when it designated representatives on the Board of Adjustment who were "institutionally hostile" to him. In the absence of evidence of bias or hostility on the part of any Board member, the court found plaintiff had not shown he was deprived of a fair hearing. 616 F.2d at 110-11. Though it framed the issue in due process terms, the court held "the union's choice of representatives to a System Board cannot be said to have worked an injury upon an employee-grievant unless the choice can be shown to have affected the fairness and reliability of the adjudicatory process." *Id.* at 110. The Amended Complaint does not expressly allege bias or hostility against plaintiffs on the part of Gilmartin or Diamond, or any irregularity in the proceedings which affected the fairness and reliability of the Board's decision. It does allege that at one point "Gilmartin personally objected to Plaintiffs' line of questioning while presiding over the hearing and had to be reminded that Board members are not permitted to participate in such a way." (Am. Compl. [10] ¶ 32). In their brief plaintiffs argue this is evidence of bias. (Pl. Brief in Resist. [15] at 15). A single instance of improper objection (the content and context of which are not alleged) quickly corrected, presumably by LaRocco, does not in the Court's judgment plausibly state a claim that the fairness of the process was tainted by bias.

Plaintiffs' status as former employees and the matters of which they complained put them at odds with both the Union and Frontier. Though it could be anticipated Gilmartin and Diamond would join in a decision adverse to plaintiffs, it does not follow that plaintiffs were bound to lose from the outset. The lengthy Board Decision was authored by its neutral Chairperson, John LaRocco. The Amended Complaint does not challenge his neutrality and independence, or plead any facts that would call into question the integrity of his judgment. Gilmartin and Diamond were given two choices in response to the decision drafted by LaRocco: "I concur" or "I dissent" signified by checking a line for one of these choices and their signature. (Board Decision [12-2] at 38). A reasoned decision by LaRocco in favor of plaintiffs would, as a practical matter, have put Gilmartin and Diamond in a difficult position. Simply rejecting his decision by dissent notation arguably would have opened the result to challenge on judicial review as "without foundation in reason or fact." *Sullivan*, 856 F.3d at 539 (an award "without foundation in reason or fact" is not within the scope of the Board's jurisdiction) quoting *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Nw. Air., Inc.*, 858 F.2d 427, 430 (8th Cir. 1988), in turn quoting *Bhd of Ry., Airline & S.S. Clerks v. Kansas City Terminal Ry. Co.*, 587 F.2d 903, 906 (8th Cir. 1978)); 45 U.S.C. § 153 First (q). It is speculative what the ultimate outcome would have been had LaRocco agreed with plaintiffs, but the key one way or the other lay in his neutral opinion.

## 2.      Due Process Violation

Plaintiffs allege the adverse interest and underlying involvement of Gilmartin and Diamond also violated their right to due process. Plaintiffs cite three RLA cases in support of their argument. The most recent, *Int'l Ass'n of Machinists & Aerospace Workers v. Metro-North Commuter R.R.*, 24 F.3d 369 (2d Cir. 1994), involved a NRAB award vacated on due process grounds. A member of the NRAB Second Division which had decided the dispute between two unions was an

employee of the prevailing union and had signed its brief in the proceeding. *Id.* at 371. "The central holding of that short opinion is that a person cannot participate as both an interested party and a decision-maker on an NRAB panel." *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 720 n.3 (7th Cir. 2006) (citing *Metro-North*, 24 F.3d at 371-72). *Metro-North* is rarely cited and no other court has adopted its broad holding. The Seventh Circuit in *CSX* said *Metro-North* was inapplicable to the RLA Public Law Board (another type of RLA Board) review case before it because that Board consisted of two interested party decision-makers and one neutral as contemplated by the RLA. The same distinction would apply with respect to the Frontier Board. *Id.*

*Hornsby v. U.J. Dobard*, 291 F.2d 483 (5th Cir. 1961), involved an alleged due process violation resulting from the admission made by the Chairman of the NRAB Fourth Division which heard the arbitration that as a union employee he could not rule contrary to the wishes of the union. *Id.* at 485-87. The case was remanded to the District Court to examine the due process claim. *Id.* at 487. The claim was rejected on remand. *Hornsby v. Dobard*, 232 F. Supp. 25, 26-27 (E.D. La. 1964).

*Edwards v. Capital Airlines, Inc.*, 176 F.2d 755 (D.C. Cir.), *cert. denied*, 338 U.S. 885 (1949), involved a Railroad System Board of Adjustment composed of two members selected by the Union and two by the Company, with no neutral. *Id.* at 759. At issue was a seniority question in which the Union supported the prevailing position of a majority of its members against two non-member employees. The Company had no stake in the matter. The court was concerned by the fact "the making of the award was in the hands of [grievants'] active adversaries," though it did not refer to due process as the source of the concern. *Id.* The court ultimately held the grievants had a right to judicial review and that the award was presumptively valid. *Id.* at 760-61. It remanded the

case to ascertain the precise meaning of the award. *Id.* at 762. If it conformed to the court's interpretation of the labor agreement, it would be upheld. *Id.*

These few cases are factually distinct. None involved a neutral decision-maker who authored the written decision under review. They do not convincingly support the proposition that due process requires union and company members of a System Board of Adjustment be disinterested, with no involvement in or knowledge of the subject matter of the grievance generally, or in a case where a grievance is opposed by both the union and company. To so hold would be an unprecedented departure from the norms of practice and procedure of System Boards of Adjustment under the RLA. It would also find no support in the limited scope of due process review permitted by the Eighth Circuit.

Our Circuit has held due process review of RLA arbitration decisions is "limited to the procedural due process afforded by the arbitration itself[.]" *Sullivan*, 856 F.3d at 537.[5] This means due process incorporates the procedures required by the RLA, which are: "(1) the Board be presented with a 'full statement of the facts and all supporting data bearing on the disputes,' 45 U.S.C. § 153 First (i); and (2) the '[p]arties may be heard either in person, by counsel, or other representatives . . . and the . . . Board shall give due notice of all hearings to the employee.' 45 U.S.C. § 153 First (j)." *Goff*, 276 F.3d at 997 (quoting statute).[6] *See Sullivan*, 856 F.3d at 537-38 (quoting *Goff*). Plaintiffs do not allege any procedural deficiencies in these respects. Extending the sweep of RLA due process to require unions and carriers to designate disinterested and uninvolved

---

[5] Like this case, *Sullivan* involved review of an airline System Board of Adjustment decision. 856 F.3d at 537.

[6] *Goff* involved review of a Public Law Board decision. The Board consisted of one Union member, one employee member, and a neutral who acted as chair. 276 F.3d at 995.

Board members with no foreknowledge of the dispute would go significantly beyond the procedures required by the RLA. That said, the particular circumstances of Mr. Diamond's alleged involvement in the subject of the grievances are not without arguable due process concern with respect to his selection as a Board member. He was the Frontier signatory on the LOA and it is fair to assume he was involved in its negotiation and drafting. As a Board member he was called upon to interpret the LOA he executed. Also, though not pleaded in the Amended Complaint, plaintiffs assert he authored the initial letter denying plaintiffs' request for equity payments which, if true, put him in the decision-making stream under scrutiny. Broader concepts of due process would not allow one to sit as judge of his own decision making and documents at issue. However, as noted, the Eighth Circuit has thus far limited due process inquiry into RLA Board proceedings to assuring the procedures required by the statute have been followed.

Assuming the Eighth Circuit were to agree with the *Wells* court that evident Board member bias or hostility which affects the fairness and reliability of the process would offend due process, for reasons previously given that has not been sufficiently alleged.

Count I of plaintiffs' Amended Complaint fails to state a claim on which judicial review relief may be granted based on the membership of Gilmartin and Diamond on the Board of Adjustment. Their selection and participation as Board members did not violate any relevant provision of the RLA or violate plaintiffs' limited right to procedural due process as articulated by the Eighth Circuit.

### 3.    Vesting

Paragraph 5 of CBA Article 24A entitled "Vesting" states: "The Equity Participation will vest in proportion to the actual investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled 'Flight Attendant Restructuring Investments.'" That letter,

which is attached to the Amended Complaint, in general memorialized certain pay and benefit concessions made by the flight attendants in return for Equity Participation, for examples, reductions in paid holidays, sick days, cessation of 401k matching contributions and the like. (Am. Compl. Ex. 2 [10-2]). To the extent the "Investments" (concessions) ceased or were not made, the value of the Equity Participation would be reduced. The Amended Complaint alleges the "Vesting" paragraph gave plaintiffs a vested interest in Equity Participation. (*Id.* [10] ¶ 12).

In their brief, Plaintiffs argue the phrase "The Equity Participation will vest" gave them a vested right in Equity Participation "when and if it occurred." (Pl. Brief in Resist. [15] at 13). They view the March 15, 2017 LOA in which Frontier agreed to pay $40 million to satisfy Article 24A's Equity Participation provision as an "Equity Event" which triggered their right to share in the Equity Payment. (*Id.* at 13-14). They note the LOA was captioned "Equity Participation Payment." (LOA [15-1] at 1).

Plaintiffs' vested right claim was presented to the Board of Adjustment which held plaintiffs "did not acquire or possess any permanent, vested right to receive payments from the $40 million pool." (Board Decision [12-2] at 37). Plaintiffs argue, in substance, the Board Decision in this regard should be set aside because the Board got it wrong.

Plaintiffs' vesting claim seeks to enforce rights granted under the CBA, specifically paragraph 5 of Article 24A. The vesting issue is disputed. Resolution depends on an interpretation of paragraph 5. It is therefore a "minor" dispute under the RLA. *Sturge v. Nw. Airlines, Inc.*, 658 F.3d 832, 837 (8th Cir. 2011) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994)). The Board of Adjustment has "mandatory, exclusive, and comprehensive jurisdiction over minor disputes." *Id.* at 836 (quoting *Hastings v. Wilson*, 516 F.3d 1055, 1059 (8th Cir. 2008)).

This Court accordingly lacks jurisdiction to decide the vesting claim anew. The Court is "limited to the judicial review of the Board's proceedings" as provided in the RLA. *Andrews*, 406 U.S. at 325. As stated before, the scope of that review is very narrow.

The statute does not provide for merits review of a Board decision, however, the Eighth Circuit has said that if a decision is so far afield it is "without foundation in reason or fact" the decision may reflect a failure of the Board to confine itself to matters within its jurisdiction, one of the three grounds to set aside a Board decision in § 153 First (q). *Sullivan*, 856 F.3d at 539 (quoting *Nw. Air*, 858 F.2d at 430). The court has elaborated that an award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Id.* (quoting *Kansas City Terminal Ry. Co.*, 587 F.2d at 906, in turn quoting *Bhd. of R.R. Trainmen v. Central of Ga. Ry. Co.*, 415 F.2d 403, 411-12 (5th Cir. 1969)). The test is "whether the remedy . . . is rationally explainable as a logical means of furthering the aims of [the CBA]." *Id.* (quoting *Nw. Air*, 858 F.2d at 430, in turn quoting *Kansas City Terminal Ry. Co.*, 587 F.2d at 906-07). "Stated another way, the award must draw its essence from the collective bargaining agreement." *Id.*

The Board viewed the LOA between the Union and Frontier as having terminated Article 24A and all of its subsections, replacing it with the obligations specified in the LOA. (Board Decision [12-2] at 31). By its terms Frontier's $40 million payment was made in ". . . full and complete satisfaction of all the Company's obligations in respect of the Equity Participation and Article 24A . . . ." (*Id.* quoting LOA; Paschke Decl. Attach. [15-1] at 1). Even though the LOA was entitled "Equity Participation Payment" the Board reasoned the payment was not an Equity Event which triggered Article 24A because that provision no longer existed and the $40 million

was not equity but a lump sum payment for "complete relief from any potential future equity payment." (Board Decision [12-2] at 32).

The determinative question for the Board thus became whether plaintiffs acquired a vested right to future equity payments or payments made to satisfy Frontier's obligations under Article 24A before Article 24A was replaced by the LOA. (Board Decision [12-2] at 35). The Board ultimately concluded the Vesting paragraph, paragraph 5, did not explicitly create a permanent right which could not be modified by subsequent agreement between the Union and Frontier. In this regard the Board relied on what it said was "the ordinary rule that a labor organization and employer may agree to modify or eliminate a contract benefit, absent language that the subject matter could never be left to the contingencies of future negotiations." (*Id.* at 36). Paragraph 5 contained no such language and indeed contemplated possible reduction in the value of Equity Participation depending on the concessions put in place. (*Id.*). The Board also said extrinsic evidence received at hearing did not support plaintiffs' claim that they had accrued a vested right. (*Id.* at 37).

The Board cited *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 135 S. Ct. 926 (2015) in support of its reasoning. *Tackett* involved a claim by retired employees that certain collective bargaining agreements "created a right to lifetime contribution-free health care benefits[.]" 135 S. Ct. at 930. The Supreme Court held ordinary principles of contract law should apply to interpretation of the agreements. In the course of its discussion the Court recognized "the traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'" *Id.* at 937 (quoting *Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 207 (1991)). "'[A] collective bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's

expiration,'" but continuation cannot be inferred if the "contract is silent as to duration . . . ." *Id.* (quoting *Litton*, 501 U.S. at 207, with alterations). The context is different, but arguably *Tackett* supports the proposition that for a CBA contract right to continue beyond subsequent modification which terminates the provision containing that right, the CBA must explicitly have said so. Continuation cannot be inferred from silence.

The Board's decision on the vesting issue is not without foundation in reason or fact. It has a basis rationally connected to the language of the CBA and clearly draws its essence from the CBA and the LOA which modified it. Whether or not this Court would agree with the Board's resolution of the issue is beside the point, the decision was within the Board's exclusive jurisdiction and cannot be disturbed on judicial review.

Count I of the Amended Complaint fails to state a claim for setting aside the Board's decision on judicial review on any of the three grounds urged.

## B.      Promissory Estoppel

In Count II of the Amended Complaint plaintiffs seek recovery under the doctrine of promissory estoppel. Frontier moves to dismiss because an action for promissory estoppel will not lie where there is an express contract concerning the subject matter, and the Amended Complaint does not sufficiently plead the alleged promises.[7]

"Promissory estoppel is a quasi-contract doctrine which will, in some circumstances, enforce a non-contractual promise." *Farm & Ranch Servs., Ltd. v. LT Farm & Ranch, LLC*, 779

---

[7] In their briefing both sides primarily rely on Iowa law as governing the common-law claims. Iowa has little to do with this case beyond the facts plaintiffs elected to sue here and are represented by Iowa attorneys. However, no choice of law issues have been raised which the Court will take as a de facto agreement that the law of the forum state should apply to the common law claims.

F. Supp. 2d 949, 965 (S.D. Iowa 2011). "The effect of the doctrine of promissory estoppel 'is to imply a contract in law where none exists in fact.'" *Friedman v. BRW, Inc.*, 40 F.3d 293, 297 (8th Cir. 1994) (quoting *Grouse v. Group Health Plan*, 306 N.W.2d 114, 116 (Minn. 1981)); *see Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 45, 48 (Iowa 1999) (quoting *Friedman*); 28 Am. Jur. 2d Estoppel & Waiver § 54 at 523 (2011) ("Estoppel & Waiver"). "The law will not imply a contract where there is an express contract." *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 526 (Iowa 2015) (quoting *Scott v. Grinnell Mut. Reins. Co.*, 653 N.W.2d 556, 562 (Iowa 2002)). "A person who pleads an express contract ordinarily cannot also recover under an implied contract." *Legg v. West Bank*, 873 N.W. 2nd 763, 771 (Iowa 2016) (citing *Scott*, 653 N.W.2d at 561). That is because express and implied contract "cannot coexist with respect to the same subject matter . . . the former supersedes the latter." *Id.* (quoting *Chariton Feed & Grain v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985)); *see* Estoppel & Waiver § 55 at 523.

As Iowa case law has developed, promissory estoppel has four elements the first and most critical of which is "a clear and definite promise." *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 810 (2018) (quoting *Schoff*, 604 N.W. 2d at 49). "A promise is 'clear' when it is easily understood and is not ambiguous" and is "'definite' when the assertion is explicit and without any doubt or tentativeness." *Schoff*, 604 N.W. 2d at 51 (citing dictionary definitions).

The alleged promises on which the promissory estoppel claim is based are:

> 43. As part of the negotiated CBA, Frontier represented to the Plaintiffs that they would be entitled to Equity Participation in exchange for Concessions made by the Plaintiffs. The value of this Equity Participation was to be determined by the amount of investment of any future investors, new equity, and/or public offerings. (the "Equity Event").

> 44. Upon the occurrence of an Equity Event, Frontier further represented that Plaintiffs would receive an Equity Payment.

> . . . .

46. Frontier made the promises through multiple presentations and documents presented to Plaintiffs and other flight attendants during the course of CBA negotiations.

(Am. Compl. ¶¶ 43, 44, 46).

The CBA in Articles 24A and D addressed Union members' rights to Equity Participation, the same subject matter as the alleged promises. In Count I of the Amended Complaint and in their grievances before the Board of Adjustment plaintiffs claimed a contract right to share in the $40 million payment because, as provided in Article 24D, they were flight attendants on the Frontier Attendant Seniority List as of January 1, 2012, and paragraph 5 of Article 24A vested their right to Equity Participation. Under well-established law, having pleaded and claimed an express contract right to Equity Participation and to share in the $40 million, plaintiffs cannot under the implied contract doctrine of promissory estoppel claim the same thing.

The promises on which plaintiffs base their promissory estoppel claim were allegedly made "[a]s part of the negotiated CBA" "during the course of the CBA negotiations." (Am. Compl. [10] ¶¶ 43, 46). Prior and contemporaneous negotiations on the same subject are ordinarily considered merged in the resulting contract, a further reason to conclude the alleged promises are not actionable apart from the contract. 17A Am. Jur. 2d Contracts § 378 (2016) at 376; *see BVS, Inc. v. CDW Direct, LLC*, 936 F. Supp. 2d 1013, 1028 (N.D. Iowa 2013) (citing *Starry v. Starry & Lynch*, 234 N.W.2d 281, 284 (1931)), *rev'd on other grounds*, 759 F.3d 869 (8th Cir. 2014). The terms "Equity Participation," "Equity Event" and "Equity Payment" have no meaning apart from the CBA. Their interpretation favorable to plaintiffs to entitle them to share in the $40 million payment would be at odds with the Board's interpretation of the same language in the exercise of its exclusive jurisdiction.

If plaintiffs could claim promissory estoppel, the alleged promises recited in the Amended Complaint are too conclusory, nonspecific and lacking in clarity to adequately plead a "clear and definite promise" on which relief could be granted. Indeed, plaintiffs describe the alleged promises as representations. (Am. Compl. [10] ¶¶ 43, 44). The Iowa Supreme Court has said a representation—"a statement . . . made to convey a particular view or impression of something with intention of influencing opinion or action"—does not constitute a promise. *Schoff*, 604 N.W.2d at 51 (quoting dictionary definition). Essentially all the Amended Complaint alleges is that "through multiple presentations and documents presented to [p]laintiffs" Frontier represented plaintiffs would be entitled to Equity Participation and receive an Equity Payment on occurrence of an Equity Event. (Am. Compl. [10] ¶ 46). No factual content is pleaded about what was said, by who, when and in what circumstances to state a plausible claim that responsible officials of Frontier made a clear and explicit promise which would entitle plaintiffs to a share of the $40 million payment.[8] A complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "'labels and conclusions'" and "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (further citation omitted). The Amended Complaint lacks sufficient factual content about the alleged promises.

---

[8] Frontier could not have promised plaintiffs they would receive an Equity Payment from the $40 million fund. The LOA which created the fund in satisfaction of the Equity Participation provision in the CBA was entered into after plaintiffs left employment.

Count II of the Amended Complaint fails to state a claim for relief on the basis of promissory estoppel.

## C.     Unjust Enrichment

In Count III of the Amended Complaint plaintiffs seek recovery under the doctrine of unjust enrichment. As with Count II's promissory estoppel, Frontier moves to dismiss arguing there can be no recovery for unjust enrichment where as here there is an express contract concerning the same subject matter.

Unjust enrichment is also a species of implied or quasi-contract. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 755 n.3 (8th Cir. 2006) (citing 66 Am. Jur. 2d Restitution & Implied Contracts § 9 (2001)); *Dean Snyder Const. Co. v. Travelers Prop. Cas. Co. of America*, 173 F. Supp. 3d 837, 854 (S.D. Iowa 2016) (applying Iowa law); *Smith v. Stowell*, 256 Iowa 165, 125 N.W.2d 795, 799-800 (1964). Unjust enrichment, however, is fundamentally equitable in nature, not contractual. *See State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001). The doctrine "is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *Id.* The elements of recovery for unjust enrichment are "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Id.* at 154-55; *see Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting *Palmer*).

The Amended Complaint alleges plaintiffs made pay and benefit concessions beginning in January 2012 as requested by Frontier in collective bargaining negotiations. The concessions were made to assist Frontier financially. The concessions continued until plaintiffs left employment.

Frontier received the benefit of the concessions but has not compensated plaintiffs for them. As a result, Frontier has been unjustly enriched. (Am. Compl. ¶¶ 54-57).

As this Court has said before, under Iowa law where an express contract exists with respect to the same subject matter, an alternative claim for unjust enrichment cannot be maintained. *Dean Snyder Const.*, 173 F. Supp. 3d at 853 (citing Iowa case law including *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990)); *see Johnson*, 451 N.W.2d at 175 ("Generally the existence of a contract precludes the application of the doctrine of unjust enrichment."); *see Bass v. J.C. Penny Co., Inc.*, 880 N.W. 2d 751, 764 (Iowa 2016) (where contract existed for sale of goods, "unjust enrichment fails as a matter of law") (citing *Johnson*, 451 N.W.2d at 175); *Rasch v. Tyson Fresh Meats, Inc.*, Nos. C16-3006-LTS, C16-3102-LTS, 2017 WL 2219985, at *13 (N.D. Iowa May 19, 2017) (quoting *Johnson*, 451 N.W.2d at 175). The Amended Complaint expressly alleges "the purpose of Article 24 was to provide compensation to these flight attendants for restructuring investments ("Concessions") being made by them, as described in a letter dated October 11, 2011." (Am. Compl. [10] ¶ 10). The October 11 letter listed the pay and benefit concessions. (*Id.* Ex. 2 [10-2]. It is therefore undisputed CBA Article 24A with its Equity Participation provision was a contract term stating the conditions under which flight attendants would be compensated for the concessions. The contract provided no compensation guarantee. Compensation depended on the occurrence of an Equity Event, something that evidently did not happen during plaintiffs' employment. By the LOA Frontier paid $40 million in satisfaction of its Equity Participation obligations going forward. Plaintiffs grieved (and sued in this Court) claiming that though they had left employment paragraph 5 of Article 24A gave them a contractual vested right to share in the payment. The Adjustment Board held they had no vested right, and that the $40 million was not an Equity Event. Though ultimately plaintiffs were found to have no right to recover under the

terms of the CBA, the contract unquestionably addressed the subject of compensation for the pay and benefit concessions. Plaintiffs cannot under a theory of unjust enrichment recover compensation to which they were not entitled under the contract with Frontier entered into on their behalf. The unjust enrichment claim must also be dismissed.

**IV.**

For the reasons given above, it is respectfully RECOMMENDED that Frontier's Motion to Dismiss Plaintiffs' First Amended and Substituted Complaint [12] be granted for failure to state a claim upon which relief can be granted, and that judgment be entered accordingly. Fed. R. Civ. P. 12(b)(6). Frontier's first Motion to Dismiss [6] plaintiffs' original Complaint remains pending of record and should be denied as moot.

IT IS ORDERED that the parties shall have until the time allowed in 28 U.S.C. § 636(b)(1) to file written objections to the Report and Recommendation. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of plaintiff's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated November 25, 2019.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE