IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADELINE CLARK, et al.<br><br>    Plaintiffs,<br><br>vs.<br><br>FRONTIER AIRLINES, INC.<br><br>    Defendant. | Case No. 4:19-cv-00012-JEG-RAW<br><br><br><br>**PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

## BACKGROUND

Plaintiffs are a group of approximately 100 former flight attendants who were employed by the Defendant, Frontier Airlines, Inc. ("Frontier") for varying lengths of time.  For many years, Frontier experienced significant financial difficulties.  In 2008 Frontier filed for bankruptcy.  As it struggled to remain afloat, Frontier began a series of aggressive cost-cutting measures to downsize the company.

While Frontier was attempting to quickly reduce its operating costs, Plaintiffs and other employees experienced wage and benefits reductions, as well as reductions in force.  Soon after, the Frontier flights attendants voted to unionize.  Plaintiffs were represented by the Association of Flight Attendants – CWA ("Union").  In 2011, the Union negotiated, and the members ratified, a collective bargaining agreement ("Agreement") outlining various terms and conditions of employment.  Among them was Article 24, a provision allowing for "Equity, Profit-Sharing, and Wage & Benefit Snapbacks".

Between January 1, 2012 and March 15, 2017, Plaintiffs separated their employment with Frontier for various reasons and at various times. Only after leaving employment, did the Plaintiffs learn that, according to Frontier and the Union, they would no longer be eligible for Article 24 benefits even though they had endured the wage and benefit reductions which those benefits were specifically designed to offset.

Despite their status as former employees, Plaintiffs nonetheless filed a collective grievance against Frontier claiming entitlement to equity payments. Frontier and the Union strongly opposed Plaintiffs' claims. The grievance was denied and the matter proceeded to arbitration by a System Board of Adjustment ("Board") which included two of the very people who were already actively adverse to Plaintiffs, as well as a purported "neutral" member chosen by them. A hearing was held and the Board, not surprisingly, denied Plaintiffs' grievance.

Plaintiffs filed the instant complaint after the Board denial, and Frontier filed a motion requesting dismissal. A Report and Recommendation ("Report") was issued, recommending that Frontier's motion to dismiss be granted. For the reasons stated below, Plaintiffs object to the Report.

**LEGAL STANDARD**

This Court's review is *de novo*. 28 U.S.C. §636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

# OBJECTIONS

**I.  THE DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE ESTABLISHED THE SYSTEM BOARD OF ADJUSTMENT FAILED TO COMPLY WITH THE REQUIREMENTS OF THE RAILWAY LABOR ACT.**

Judicial review of Adjustment Board orders is limited to three specific statutory grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act ("RLA"); (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U. S. C. § 153 (First) (q). Only upon one or more of these bases may a court set aside an order of the Adjustment Board. See *Andrews v. Louisville & Nashville R. Co.*, 406 U. S., at 325; *Locomotive Engineers v. Louisville & Nashville R. Co.*, 373 U. S. 33, 38 (1963).]

Although the RLA provides some flexibility for boards to select a chairman and create their own hearing rules, such flexibility does not override the strict requirements of the statute. §157 requires the board of adjustment must (1) give the parties a full and fair hearing; (2) allow the parties an opportunity to present evidence in support of their claims; and (3) allow the parties an opportunity to present their case in person, by counsel, or by other representative as they may respectively elect.  45 U.S.C. §157 (Third)(b).

    **a.  Plaintiffs were deprived of a full and fair hearing.**

Plaintiffs urge they were denied a full and fair hearing because two of the three Board members were incapable of impartiality.  Mr. Gilmartin serves as the senior legal counsel for the Union.  As such, he played a lead role in the negotiations on behalf of the Union.  Further, Mr. Gilmartin participated in subsequent negotiations in 2014-2017 during the critical time when the Union and Frontier were attempting to resolve certain issues surrounding Article 24 specifically.

3

His animosity against the Plaintiffs revealed itself when, during the Board arbitration hearing, he personally objected to a question posed to the Union by Plaintiffs' counsel.

Mr. Diamond serves as the in-house counsel for Frontier. However, Board Member Diamond's personal involvement in this matter is even more pronounced. Diamond executed many documents on behalf of the Company that are central to this case. He was also the author of the initial letter to Plaintiffs, denying their request for equity payments. His opposition to Plaintiffs' grievance was well known and, more importantly, *decided* before the Board ever heard the evidence.

The Report acknowledges the Fifth Circuit's holding in *Wells,* which concluded that arbitrators must decide cases "without regard to their institutional predilections" but failed to adopt it. Instead, the Report replies on the Eleventh Circuit's holding in *Henry v. Delta Airlines* to conclude that the RLA does not require individual arbitrators to be impartial or neutral, thereby allowing both Gilmartin and Diamond to incorporate their respective union and company self-interests into their decision-making. *Henry v. Delta Airlines*, 759 F.2d 870 (11th Cir. 1985).

The Report's reliance on *Henry* is misplaced. In *Henry*, as in most RLA judicial review cases, the employee (represented by the union) and the company were adverse to each other. Because each side is allowed a representative on the Board, the process is viewed by the Court to be bipartisan.

This case presents a different set of circumstances. The Board was composed of three members: one appointed by the union, one appointed by Frontier, and a neutral member jointly chosen by them. None were appointed by the Plaintiffs. Both the Union and Frontier representatives were already declared to be adverse to the Plaintiffs, and together they chose the

4

third "neutral" member. The bipartisan composition described by the Court in *Henry* is absent here and, as a result, this Court should decline to follow *Henry*.

      **b.    Plaintiffs were limited in the evidence they could present.**

In order to adhere to the requirements of the RLA, the Board must also allow the parties an opportunity to present evidence in support of their claims. The participation of Gilmartin and Diamond as Board members prevented the Plaintiffs from gathering information from them as witnesses. Both Gilmartin and Diamond materially participated in various aspects of the formation, negotiation, and alteration of the Agreement. This includes Article 24 and the corresponding Letter of Agreement. Plaintiff could not expect a full or fair hearing when key witnesses were made unavailable by their participation as a Board member.

**II.    THE DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE SYSTEM BOARD OF ADJUSTMENT VIOLATED PLAINTIFFS' DUE PROCESS.**

In addition to the statutorily created parameters of review, a majority of federal courts have recognized that Board arbitration decisions are reviewable for possible due process violations. *Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 997 (8th Cir. 2002); See also *Union Pac. R.R. v. Price*, 360 U.S. 601, 616, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959) (finding awards of the National Railway Adjustment Board reviewable for a violation of due process); *Shafii v. PLC British Airways*, 22 F.3d 59, 64 (2d Cir. 1994) ("Relinquishing courts' ability to review the NRAB's procedures for due process violations would leave unprotected a plaintiff's legitimate constitutional right to be treated in accord with due process before the Board."); *Armstrong Lodge No. 762 v. Union Pac. R.R.*, 783 F.2d 131, 135 (8th Cir.1986) (reviewing an arbitration award where party argued the arbitration hearing failed to meet the requirements of due process).

Leading up to and during the hearing, Plaintiffs strongly objected that the composition of the Board was improper and unfair.[1] The narrow scope of judicial review in RLA cases deprives the parties of having conclusive case law in the Eighth District, so Plaintiffs identified cases with similar fact patterns from other jurisdictions.

The first was *Metro-North,* which held that a fundamental precept of due process has been that an interested party in a dispute cannot also sit as a decision-maker. *International Ass'n of Machinists and Aerospace Workers v. Metro-North Commuter Railroad*, 24 F.3d 369 (2nd Cir. 1984); See, e.g., *Withrow v. Larkin*, 421 U.S. 35, 46-47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 578-79, 93 S. Ct. 1689, 1697-98, 36 L. Ed. 2d 488 (1973). *Metro-North* supports Plaintiffs argument that Frontier's appointment of Diamond as its Board representative violated Plaintiffs' due process. Not only was Diamond intimately involved with the underlying Agreement and negotiations, he also served as the initial decision-maker when Plaintiffs request for equity payments were denied.

The Report rejects *Metro-North* because it is apparently rarely cited and has not been broadly adopted by other courts. Instead, the Report relies on the Seventh Circuit's holding in *Int'l Bhd. Of Elec. Workers v. CSX Transp. Inc.*, which held that *Metro-North* was inapplicable when a Board consists of two interested party decision-makers and one neutral as contemplated by the RLA.

The standard for Board composition adopted by the Eighth Circuit in *Brotherhood of Locomotive Eng'rs Int'l Union v. Union Pac. R.R.,* 134 F.3d 1325 (8th Cir. 1998) (hereinafter "*BLE*") should be followed by this Court. In *BLE*, two competing unions represented employees

---

[1] In its Decision, the Board acknowledged Plaintiffs' strong objection to the composition of the Board, however the Board concluded it lacked authority to decide the issue.

of the company.  A dispute arose between one of the unions and the company and a Board was appointed to adjudicate the matter.  Because the second union would have been affected by the outcome, the Board allowed it to "participate" but it was not permitted to appoint a member to the Board.  The Court determined that the second union had the right to participate *as a member of the Board deciding the case*.  In doing so, the Court recognized that the unusual precedent of the Eighth Circuit required such a result, even though it was a departure from the plain language of the RLA.

Here, though the Plaintiffs were no longer represented by the Union, the same fairness principles apply.  Specifically, an aggrieved employee has the right to representation on the Board to ensure a bipartisan process.  There is no reason to differentiate active employees who may choose their Board representation from former employees who, by virtue of their employment status, cannot be represented by a union.

The Report also appears to take the position that due process was not violated because the "neutral" member authored the Board Decision.  This reasoning contradicts the explicit conclusion of *BLE,* which held that an employee's interest in an arbitration proceeding will be better served if his union representative <u>sits in on the closed door discussion that follow a presentation</u>.  *Id.*  Board member LaRocco's purported neutrality and writing of the decision are irrelevant. Had proper people been on the Board, the decision may have been different. Simply stated, different arguments would have been made behind closed doors if the Plaintiffs were permitted to participate through their own representative.  Such reasoning was accepted by the Eighth Circuit in *BLE* and its underlying cases and should also be recognized in this case.  *Id.*

The Report also rejects *Edwards* as being factually distinct from this case.  Plaintiffs disagree.  *Edwards v. Capital Airlines, 176 F.2d 755 (D.C. Cir. 1949).*  In *Edwards*, two pilots

7

sought judicial review of an unfavorable Board decision. The Board was composed of two union members who were adverse to the pilots, as well as two company representatives who had no stake or interest in the outcome (i.e. neutral). Likewise, the Plaintiffs in this case were governed by a Board with two members who were actively adverse to them, along with one neutral member with no stake in the outcome. Additionally, like the Plaintiffs here, the pilots in Edwards had no representation on the Board. In permitting judicial review, the court stated:

> Persons in their situation must have available to them, at some point, an impartial look at a decision, thus made, denying their claims to substantial rights. This is the time-honored function of an equity court. The general principle, applicable alike to judicial and to administrative determinations, is too well settled to require citation of authority. We think that the danger to the rights of the non-member few, clearly inherent in the combination of circumstances here present, calls for the application of that doctrine. *Edwards* at 761.

This Court should follow the due process principles articulated in *Edwards*.

Simply stated, the Plaintiffs in this case were doomed from the start. There was no conceivable way they would get a fair hearing from the Board when two of the members had already stated their adverse position. Further, the Union and Frontier were acting in concert to deprive Plaintiffs of a due process. In such circumstances, the Court has recognized a futility exception and permitted judicial review of decisions. *Schwartz v. IAM Dist. 141*, 2018 U.S. Dist. LEXIS 94538* (citing *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324 (1969).

**III. THE DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE PLAIN MEANING OF THE AGREEMENT ESTABLISHED A VESTED RIGHT.**

Article 24A.5 of the Collective Bargaining Agreement describes the rights for equity participation. It states:

> Vesting: The Equity Participation *will vest in proportion to the actual Investments* as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments". (Emphasis added).

The very first sentence clearly and unambiguously states that "equity participation will vest" and that the value will be calculated "in proportion to the actual Investments as set forth in the letter dated October 11, 2011."[2] The Eighth Circuit has held that a "vested right" is an immediate fixed right of a present *or future* enjoyment. *Pollack v. Meyer Bros. Drug Co.*, 233 F. 861, 868 (8th Cir. 1916) (emphasis added).

In *M & G Polymers USA LLC v. Tackett*, the Supreme Court was faced with reviewing the long-standing principle that vesting could be inferred in employee contracts. *M & G Polymers USA LLC v. Tackett*, 135 S. Ct. 926 (2015). The Court concluded that such inferences were impermissible, and that any agreement to provide vested benefits must be specifically articulated in the agreement. In 2018, the Supreme Court once again emphasized the importance of clear, unambiguous language by stating "[i]f the parties meant to vest health care benefits for life [or until age 65], they easily could have said so." *CNH Industrial N.V. v. Reese*, 138 S. Ct. 761,766 (2018).

Here, nothing is inferred and Plaintiffs' rights are clearly vested, even if the future amount was uncertain. The Agreement specifically states that the equity participation will vest in proportion to the investments made. Under the holding in *Tackett*, using the term "vest" is, perhaps, the most clear evidence of the parties' intent to provide a vested benefit. Further, there is no dispute that the Plaintiffs actually made these investments. Therefore, the Plaintiffs had a vested right to equity payments. "[W]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Tackett.* at 933.

---

[2] These "investments" are the concessions made by the flight attendants.

There is nothing ambiguous about the meaning of "vest" in this Agreement. In *Finley Hosp. v. NLRB*, the Eighth Circuit restated that:

> Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight. Unless a different intention is manifested, where language has a generally prevailing meaning, it is interpreted in accordance with that meaning. *Finley Hosp. v. NLRB,* 827 F.3d 720, 724 (8th Cir. 2016).

The Report concludes that this vesting provision is somehow subject to an alternate interpretation offered by the Defendant, and that using the word "vest" does not really reflect an intent to vest. The alternate interpretation is unreasonable and does not survive the scrutiny required under *Tackett,* which mandates that using the meaning in accordance with its express intent in the Agreement.

**IV.   THE DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE DEFENDANT PROMISED EQUITY PAYMENTS.**

The court has established the following elements as essential for recovery under a theory of promissory estoppel: "(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to this relief." *Johnson v. Pattison*, 185 N.W.2d 790, 795 (Iowa 1971); accord *National Bank v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989); *In re Estate of Graham*, 295 N.W.2d 414, 418 (Iowa 1980); *Schoff v Combined Ins. Co. of Am..*, 604 N.W.2d 43, 48 (Iowa 1999).

In their Amended and Substituted Complaint, Plaintiffs identify that Frontier representatives promised Plaintiffs they would receive an equity payment; that these promises were made in documents and during presentations by Defendant; and that Frontier never notified Plaintiffs that equity payments would be conditioned on continuous employment. Despite this, the Report concludes that Plaintiffs' complaint lacks sufficient factual content about the promises

made by the Defendant. Plaintiffs object to this finding. However, to the extent that Plaintiffs' complaint lacks the exact specificity this Court seeks, it is because the documents and other information sought are in the possession of Defendant.

As former employees, Plaintiffs do not have access to the information that was prepared and presented at meetings described in the complaint. Despite the lengthy course of these proceedings, Plaintiffs have not been permitted to conduct discovery to obtain the documents referenced in their pleadings. The Court should allow Plaintiffs' claim of Promissory Estoppel to proceed so that discovery can be conducted and Plaintiffs can obtain the information that was presented at meetings regarding equity participation, which will support the claim of the promises made by Frontier.

**V.   THE DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE DEFENDANT WAS UNJUSTLY ENRICHED.**

A party asserting unjust enrichment must allege that another has received a benefit, the retention of which would be inequitable. *See Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004); *Unisys Corp.*, 637 N.W.2d at 157; *HPI Health Care Servs., Inc., v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Frontier maintains that the presence of a CBA somehow prohibits Plaintiffs' claims for unjust enrichment. However, unjust enrichment is a doctrine that 'evolved from the most basic legal concept of preventing injustice.'" *In re Estate of Roethler*, 801 N.W.2d 833, 845 (Iowa 2011) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)). Plaintiffs may bring any claims necessary, even claims in the alternative, to cover their bases, including an unjust enrichment claim. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if

11

there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense.").

To recover for unjust enrichment, [the plaintiff] must show: (1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n,* 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting *Palmer*, 637 N.W.2d at 154–55). Importantly, determining whether Frontier was unjustly enriched <u>does not</u> require this court to interpret the CBA.

It is undisputed that Plaintiffs made concessions and that Frontier benefited from those concessions. Here, the Report concludes that the existence of a collective bargaining agreement covering these concessions is fatal to Plaintiffs' claim of unjust enrichment. Plaintiffs disagree. It remains unclear exactly how Frontier and the Union arrived at the figure of $40 million as payment for the equity. Notably, the parties arrived at this figure *before* the Union determined who was eligible to receive payment. Therefore, it is possible (and perhaps even likely) that Frontier and the Union used the January 1, 2012 Seniority List to negotiate the total equity payment.[3] After agreeing to $40 million, Frontier delegated its responsibility to the Union to determine eligibility for equity payments. Only then was it decided that "continuous employment" was required. Importantly, at the time of this decision, there was no contract or other agreement in place to deal with this subject. Therefore, Plaintiffs are entitled to proceed under a theory of unjust enrichment.

---

[3] There were over 900 flight attendants on the Seniority List as of January 1, 2012. Less than 600 remained when the Union determined eligibility for an equity payment required continuous employment.

## CONCLUSION

For the reasons stated, this Court should reject the disposition recommendations of the Magistrate Judge in this case and issue an order denying Defendant's motion to dismiss.

Respectfully submitted,

/s/ Kellie L. Paschke_____
Kellie L. Paschke AT# 0006038
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
Telephone:    (515) 987-0022
Facsimile:    (515) 987-6972
E-Mail:  kellie@splawiowa.com
E-Mail:  beth@splawiowa.com


 /s/ Jason D. Walke_____
Jason D. Walke, AT# 0008230
WALKE LAW, LLC
204 West Hickman Road
Waukee, IA  50263
Telephone:  (515) 421-4026
Facsimile:  (515) 216-2261
E-Mail:  jwalke@walkelaw.com
E-Mail:  nphifer@walkelaw.com

ATTORNEYS FOR PLAINTIFFS